WILLIAM VAN LOON v. ST. LOUIS MERCHANTS BRIDGE TERMINAL
RAILWAY COMPANY, Appellant.—6 S. W. (2d) 587.

Division One, April 11, 1928.

*J. L. Howell* and *R. E. Blodgett* for appellant.

*Charles P. Noell* for respondent; *Glen Mohler* of Counsel.

ATWOOD, J.—This is an action for damages on account of personal injuries sustained by plaintiff while he was working as a brakeman in one of defendant's switching crews then engaged in interstate commerce. The cause was tried on plaintiff's second amended petition, all assignments of negligence thereof having been withdrawn except assignments one and three as follows:

"(1) Defendant's agents, servants and employees negligently and carelessly placed and permitted said railroad car, with which plaintiff came in contact as aforesaid, to remain on said switch track in such close proximity to the track along and upon which the train or cut of cars aforesaid was moving, that there was not sufficient

clearance between said railroad car and the said train or cut of cars to permit plaintiff, in the discharge of his duties as rear brakeman aforesaid, to safely pass or clear said railroad car on said switch track without being thrust against and in contact with the same and thereby knocked from said train and injured.

"(3)  Defendant's agents, servants and employees in charge of and directing the movement of said train or cut of cars upon which plaintiff was then working as aforesaid, negligently and carelessly caused said train to be moved past said railroad car when they knew, or by the exercise of ordinary care could have known, that there was not sufficient clearance between said railroad car and said train or cut of cars to permit plaintiff, in the discharge of his duties aforesaid, to safely pass or clear said railroad car."

Defendant's answer was a general denial coupled with pleas of assumption of risk and contributory negligence. The reply was a general denial. The jury returned a verdict for plaintiff in the sum of $28,500, for which judgment was entered. On consideration of defendant's motion for a new trial the trial court indicated that the motion would be sustained on the ground that the verdict was excessive unless within ten days plaintiff would enter a *remittitur* in the sum of $12,000. Plaintiff thereupon entered a *remittitur* in the sum of $12,000 and from the judgment for $16,500 defendant has appealed.

While no question is raised in this appeal as to the sufficiency of the evidence to go to the jury, or the correctness of the action of the trial court in overruling defendant's demurrer to the evidence, a brief resume of the evidence will be of assistance in reaching a proper understanding and disposition of the objections here made which relate to the giving of certain instructions at the request of plaintiff and the size of the verdict.

The train in connection with which plaintiff was injured was concededly enroute from Madison, Illinois, to a railroad yard in the northern part of St. Louis, Missouri. The accident occurred on a part of defendant's lines known as the Carrie Avenue yard. The freight train in question shortly after dark on November 19, 1921, the day of accident, entered the yard upon the main line from the south going north, its destination being the Katy yards in the north part of St. Louis, where the train was to be delivered to a road engine and crew of the M. K. & T. Railroad Company, the train having been made up for that purpose in Madison, Illinois. Just north of the street known as Carrie Avenue the main line in this yard divides into two forks or branches known as the North Belt and West Belt, respectively, the North Belt being in effect a continuation of the main line, while the West Belt ran off to the west. There was a switch at the fork which it was plaintiff's duty to reline after his

train had passed over on the North Belt. Further north was another switch connecting a lead track likewise extending west from the North Belt. Still further north on the North Belt and extending also to the west was side track No. 1 which was connected with the North Belt by a switch which was about 240 feet north of the first switch mentioned. The train which plaintiff's crew was switching consisted of an engine, tender and 47 freight cars, without a caboose. It stopped at the first switch and plaintiff's foreman, Mudge, lined the switch to permit the train to go upon the North Belt. It was plaintiff's duty, as rear brakeman, after the train had passed over the switch, to reline it with the West Belt to take care of a Wabash passenger train which was then almost due. This switch was on the east or right-hand side of the train going north. At the southwest and northwest corners of the rear car on his train were ladders reaching to the top of the car, while at the southeast and northwest corners the ladders were short and did not extend to the top of the car. After relining the switch it was plaintiff's duty to run and catch the rear car of his train, climb to the top thereof and ride there in order to give and receive signals. After plaintiff had relined the switch on this occasion he ran and caught the ladder at the southwest corner of the rear car, and while so doing and when he had reached the top of the ladder he was struck on his left side by a car standing on side track number 1 in close proximity to the moving train, and was knocked from the car upon which he was riding to the track below and thereby injured. The car which struck him had been placed there shortly before plaintiff's train arrived in the yards. The switching operations by which this car was so placed were under the direct control of defendant's yardmaster, Isgrigg, and one Hassler, foreman of another one of defendant's switching crews. Hassler testified that he was standing at the south end of track 4 about seventy feet southwest of the switch on the North Belt leading on to track one, watching plaintiff's train go by, and he then saw that the car his crew had placed on track number 1 was very close, permitting not over a foot of clearance between plaintiff's train and the car. The car was also noticed by Mudge, the conductor of plaintiff's crew, before his train passed it, and he gave his engineer the stop signal. The engineer complied with the signal and Mudge called attention to the fact that the car was close. Isgrigg was then standing by Hassler about seventy feet south of the switch to track number 1, and he told Mudge to get by if he could, that the car was only there temporarily. It does not appear that plaintiff had any knowledge of these matters. The head brakeman, who watched the car from the footboard of the engine as they passed, said that the car cleared the cab by only three to six inches. There was testimony that the over-hang of the engine cab was about twelve inches more than a freight car.

. Four of appellant's five assignments of errors are on account of the giving of instructions numbered 4 and 8 requested by plaintiff, which instructions are as follows:

"4. The court instructs the jury that if you find and believe from the evidence that defendant knew that the railroad car standing on track No. 1 mentioned in the evidence was in dangerous proximity to the North Belt track mentioned in the evidence so as not to permit the plaintiff to ascend the ladder of the railroad car in defendant's moving train mentioned in the evidence with reasonable safety, in time by the exercise of ordinary care to have warned plaintiff of the danger, if any; and if you find and believe from the evidence that the plaintiff had no knowledge of the danger of coming in contact with the railroad car standing in or on track No. 1, and that the danger was not obvious and could not have been seen by him, and that he was at all times in the exercise of ordinary care for his own safety, and that the defendant knew, or in the exercise of ordinary care could have known, that the railroad car standing on track No. 1 was not at a sufficient distance to permit the plaintiff in the exercise of ordinary care in the discharge of his duties to ascend the ladder of the rear car of his train with reasonable safety; and if you further find that the defendant had sufficient time in the exercise of ordinary care to have warned the plaintiff of the dangers, if any, in passing the railroad car standing on track No. 1; and if you find that the defendant failed to warn the plaintiff of the dangers, if any, in passing the railroad car standing on track 1, and that such failure, if any, to warn plaintiff was negligence, then your verdict should be for plaintiff, provided you further find that the injuries, if any, sustained by plaintiff were the direct result of the failure, if any, on the part of the defendant to warn the plaintiff of the dangers, if any.

"8. The court instructs the jury that a servant assumes the ordinary risks incident to his employment, but does not assume the risks caused by the negligence of the master unless the servant has knowledge of the negligence of the master and continues in the employment of the master, and if in this case you should find that the defendant or any of his officers, agents or employees were negligent, and that the plaintiff was not aware of or had any knowledge of the negligence, if any, of the defendant's officers, agents and employees, or that the danger arising from his employment was not open and obvious to him, if any, then in that event the plaintiff did not assume the risks arising from the negligence, if any, of the defendant."

Appellant's first insistence is that the giving of Instruction Number 4 was erroneous "in that it assumed facts, the existence of which should have been submitted to the jury." Appellant says that the

jury should have been required "to find from the evidence that the car standing on track No. 1 was in dangerous proximity to the north belt track and that the defendant had notice of such proximity, but as the instruction reads, it is tantamount to a declaration that the dangerous proximity was conceded, whereas, as a matter of fact, both in the pleadings and the evidence such alleged dangerous proximity was sharply contested." The location of the car on side track number one was not disputed. Defendant's yardmaster and the fireman and engineer of the switching crew to which plaintiff belonged, who were shown to have seen the position of this car, were not produced at the trial. C. B. Hassler, foreman of the switching crew which placed the car, testifying as a witness for plaintiff, said that the car was kicked with sufficient force in his judgment to carry it into the clear, but that he paid no more attention to it until he saw plaintiff's train approaching, when he "noticed that the car was close," that the clearance "would not be over a foot." He further said that in estimating that the car was in the clear he had not anticipated "a man leaning out from the side of the car." Walter H. Mudge, foreman of the crew with which plaintiff was working, appearing as a witness for plaintiff, testified that before the train passed he "noticed that the car on number one had scant clearance," that he stopped the train, called Yardmaster Isgrigg's attention to the situation, that Isgrigg told him "just to try to get by if he could because the cars were only there temporarily," that the engine then proceeded by this point about four miles an hour and then increased speed to about ten miles an hour. Alex. P. Orr, head brakeman for Van Loon's crew, testifying for plaintiff, said that he was riding on the footboard of their engine and it "barely nosed by this car," clearing it "three to six inches I guess, nor over that." It is conceded that while plaintiff was climbing the ladder on the southwest corner of his moving car in the usual way he was struck by the car so placed on track 1. This physical fact and the testimony of the above three witnesses, which constituted all the evidence as to clearance, clearly demonstrate the dangerous proximity of the standing car to the moving train as an existing fact in the case. Under our ruling in Koenig v. K. C. Railways Company, 243 S. W. 1. c. 123; Davidson v. Transit Company, 211 Mo. 1. c. 356, and other cases it would not have been error to have assumed the existence of this fact in the court's instructions to the jury. However, Instruction number 4 makes no such assumption. It required the jury to find "that defendant knew that the railroad car standing on track No. 1 mentioned in the evidence was in dangerous proximity to the North Belt track mentioned in the evidence so as not to permit the plaintiff to ascend the ladder of the railroad

car in defendant's moving train mentioned in the evidence with reasonable safety," etc. The jury could not find that defendant knew the fact mentioned without at the same time finding that such fact existed, and we have ruled that a similar instruction does not assume the existence of such fact but submits that question to the jury for its finding and determination. [McMillan v. Bausch, 234 S. W. 835, l. c. 837; Brady v. Railroad Co., 206 Mo. 509, l. c. 539.] These cases, rather than those cited by appellant, are in point.

It is next urged that the giving of Instruction Number 4 was error because that instruction is in conflict with instructions numbered 5 given on behalf of defendant. Instruction Number 5 is as follows:

"5. The court instructs the jury that if you find and believe from the evidence that whatever injuries plaintiff sustained were caused solely by plaintiff's carelessness and negligence in that he took a position of danger upon the car in question and rode upon such car with his body projecting from the car so far as to come in contact with a car on an adjoining track when plaintiff knew that such car was apt to be upon such adjoining track, and could, by the exercise of ordinary care for his own safety, have known that said car was upon said adjoining track, and could, by the exercise of ordinary care for his own safety, have kept his body from so projecting from the car as to come in contact with the car on an adjoining track, then plaintiff is not entitled to recover and your verdict should be in favor of the defendant."

In support of this objection it is said that Instruction Number 5 "told the jury that if plaintiff's injuries were caused solely by the negligence of plaintiff in taking a position of danger upon a car and riding thereon with his body projecting from the car so far as to come in contact with a car on an adjoining track, when plaintiff knew that such car was apt to be upon such adjoining track, and could, by the exercise of ordinary care for his safety, have kept his body from so projecting from the car as to come in contact with a car on another track, then plaintiff could not recover, whereas the Instruction 4 assumed that there was not sufficient clearance between the two cars for a person to ride in safety, instead of submitting that issue to the jury." A similar objection is made to Instruction Number 4 as in conflict with Instruction Number 6 given for defendant, Instruction Number 6 being as follows:

"6. The court instructs the jury that if you find and believe from the evidence that at the time and place in question the agents, servants and employees of the defendant operating the northbound train in question saw that there was sufficient clearance for the train aforesaid to pass a car upon an adjoining track without danger of striking

a person concerned with his duties on the rear end of said northbound train, when such person was in the exercise of ordinary care for his own safety, then plaintiff is not entitled to recover and your verdict should be in favor of the defendant.''

The two objections last above noted are not tenable for the reason that, as already shown, Instruction Number 4 contained no such assumption of fact.

Appellant also insists that the giving of Instruction Number 8, requested by plaintiff, was error because said instruction is self-contradictory. It is said that the vice of this instruction is that in the first portion ''the jury are told with reference to the doctrine of the assumption of risk, which doctrine was pleaded in the case as a defense, that a servant assumes the ordinary risks incident to his employment, but does not assume the risks caused by the negligence of the master unless the servant has knowledge of the negligence of the master and continues in the employment of his master, and omits entirely all reference to the fact that the servant assumes the risks, even of the negligence of the master which risks are open and obvious.'' However, later in the same instruction the jury was told that in case they found that defendant, or any of its officers, agents or employees ''were negligent, and that the plaintiff was not aware of or had any knowledge of the negligence, if any, of the defendant's officers, agents and employees, or that the danger arising from his employment was not open and obvious to him, if any, then in that event the plaintiff did not assume the risks arising from the negligence, if any, of the defendant.'' This instruction consists of one sentence only and when read as a whole it fairly declares the Federal rule with reference to assumption of risk. [Seaboard Airline v. Horton, 233 U. S. 492.] The case of Pryor v. Williams, 254 U. S. 43, cited in this connection by appellant simply declares that under the Federal Employer's Liability Act the Federal rule as to assumption of risk is exclusive and the state law has no application. There is no contention that the state law applies. While appellant insists that the first part of Instruction 8 sets out the rule of law too broadly, yet, as we have already observed, the jury is required by the latter portion of the instruction to find the elements which negative the application of the defense of assumption of risk on the part of plaintiff in this case. A similar contention was made and thus ruled in Garard v. Coal and Coke Co., 207 Mo. 242, l. c. 259: ''The contention in that this instruction states too broadly the measure of duty owing by the defendant to the plaintiff. In other words, defendant says that this instruction makes it the absolute duty of defendant to furnish plaintiff a reasonably safe entry, whereas the law only requires the de-

fendant to use ordinary car to keep the entryway in a reasonably safe condition. The criticism is directed to the first paragraph of the instruction. This court upheld a verdict in a case where a very similar instruction was given. [Smith v. Fordyce, 190 Mo. 1. c. 12.] The first part of the instruction in the Smith case, supra, was fully as strong as the instruction now in question. But aside from this, when the whole instruction is read together, we think the law was properly declared. The broad statement of general principles is modified by the second paragraph of the instruction." We do not think Instruction Number 8 is open to the objection raised by appelland.

Appellant finally contends that even after the *remittitur* of $12,000 was entered the judgment for $16,500 was grossly excessive. Respondent was thirty-nine years of age, in excellent health and was earning $2400 a year at the time he was injured on November 19, 1921. The case was tried in February, 1924, and in the interim, according to the evidence, because of the injuries sustained he had been unable to engage in any regular work. His loss in wages had thus amounted to about $5000 when the verdict was rendered. There was evidence that in the accident he suffered a broken jaw and fractured skull and that one of the transverse processes of a vertebrae was broken off from the spine. X-ray specialists testifying for defendant in connection with pictures, some of which were made some two years after the injury, said that they found no evidence of a fractured skull or broken vertebrae. However, there was considerable uncontradicted testimony that plaintiff's head was severely bruised and bleeding when he was picked up, that for some time afterwards blood would accumulate in and flow from one of his ears, that he had repeated hemorrhages, that at intervals as late as about Christmas in 1923 he suffered from convulsions and periods of unconsciousness and vomited blood, that his deep reflexes were exaggerated, that the Babinsky reflex was present, that there were indications of paralysis on left side, and that his injuries were permanent although he might improve to some extent. It is true that at the time of the trial there was evidence that he was then in good flesh, yet in view of the injuries detailed which up to that time had prevented, and according to the evidence would probably continue to prevent, him from engaging in any regular lucrative employment it does not seem that the amount of the judgment finally rendered was excessive.

The judgment of the trial court is accordingly affirmed. All concur.