**Raymond NICHOLS, Plaintiff-Appellant,**

v. .

**Orville STEFFAN, a Minor, by Harry Steffan, his Guardian ad litem, Defendant-Respondent.**

No. 45348.

Supreme Court of Missouri,

Division No. 1.

March 11, 1957.

Jack H. Ross, Koenig, Dietz & Mason, William L. Mason, Jr., St. Louis, for appellant.

Dearing, Richeson & Weier, Will B. Dearing, Hillsboro, for respondent.

WESTHUES, Judge.

This is a suit for personal injuries. The amount sued for is $40,000. Plaintiff Nichols claimed he was injured when the defendant negligently moved a truck loaded with hay causing plaintiff to fall therefrom. Defendant Orville Steffan, a minor, represented in this case by his father, Harry Steffan, as his guardian ad litem, claimed he was not negligent and that plaintiff was guilty of negligence which caused him to fall and to be injured. A trial resulted in a jury verdict for the defendant and plaintiff appealed.

Plaintiff briefed three points. The first two points are directed to the giving of instructions by the trial court at defendant's request. In the third, plaintiff complains of the refusal of the trial court to give an instruction at plaintiff's request.

On December 4, 1953, plaintiff went to the Steffan home, located a short distance from where plaintiff lived, for the purpose of borrowing a 1½-ton truck to haul hay from a railroad car at Chesterfield, St. Louis County, Missouri. Defendant, then 17 years old, was at home and offered to drive the truck and to help plaintiff get the hay. They drove to a railroad siding at the Farm Bureau Service Company where the truck was backed up to the door of the boxcar containing the hay and the two proceeded to load the baled hay onto the truck. There was a dispute as to what happened after the loading was completed. Plaintiff testified that he and the defendant alighted from the boxcar, sat on the ground

and smoked a cigarette; that he then told defendant he would climb "on top of the load of hay and take the rope from him when he threw it up to me to help him tie the hay down"; that he (plaintiff) climbed up on the load at about the rear wheel of the truck; that when plaintiff reached the top of the load, defendant without any warning moved the truck forward; that this movement caused plaintiff to lose his balance and to fall to the ground seriously injuring him; that the last time he saw defendant, before the truck was moved, was when defendant was walking toward the front of the truck. There were about 85 bales of hay on the truck and the top of the hay was about 12 feet above the ground.

Defendant's version of what happened was that after the hay was loaded, he told plaintiff to stay in the boxcar while he, the defendant, moved the truck forward and away from the boxcar; that the last time he saw plaintiff, before the truck was moved, he was in the boxcar and that plaintiff did not tell him he intended to climb up on the load of hay. Other facts will be stated in the course of the opinion.

Instruction No. 2, of which plaintiff complained, reads as follows: "The Court instructs the jury that if you find and believe from the evidence that plaintiff and defendant were engaged in the unloading of hay from a boxcar onto a truck and that the defendant started toward the front of the truck after advising the plaintiff of his intention of moving it forward and that the plaintiff climbed onto said truck which was loaded with baled hay and that the plaintiff knew or by the exercise of ordinary care could have known that his footing on the top of the load of baled hay would be insecure and that he failed to direct the driver to hold the truck at a standstill while he was on said truck and failed to inform the defendant of his intention of getting onto said load of hay and in so failing, if you find he did, plaintiff failed to exercise ordinary care for his own safety, then you are instructed that under the law the plaintiff is chargeable with contributory negligence and under such circumstances he is not entitled to recover, and this is true even though you may find from the evidence that the defendant himself was guilty of negligence in some manner which may also have contributed to bring about the plaintiff's fall and injuries."

Plaintiff's first criticism of this instruction is that "the instruction assumes a material, controverted fact in that it assumes, without requiring the jury to find, that defendant advised plaintiff of his intention of moving the truck before doing so." The cases of Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24, loc. cit. 27, and Anderson v. Kincheloe, 30 Mo. 520, were cited in support of that contention. The Anderson case is of no help to us in this case except that it holds that a disputed fact may not be assumed in an instruction. That is the correct rule. See Taylor v. Kansas City, 342 Mo. 109, 112 S.W.2d 562, loc. cit. 567 (8, 9), and cases there cited. Also 88 C.J.S., Trial § 280, p. 752. In the Menke case, supra, the court considered an instruction, 180 S.W.2d loc. cit. 27 (9, 10), a portion of which was there quoted, and determined that no fact was assumed in the instruction. The court stated further that "the instruction in the first sentence requires the jury to 'find and believe from the evidence' the facts thereafter hypothesized as a basis for returning a verdict. This should ordinarily be sufficient where the facts to be found are set out properly. The practice of sprinkling quantities of 'if so,' 'if any' or 'if you so find' after every hypothesis in an instruction tends to make it confusing and unintelligible * * *." We approve that ruling. The question then before us is whether the disputed fact in the case, that is, that defendant advised the plaintiff of his intention to move the truck, was submitted to the jury to determine or whether the instruction was so worded that such fact was assumed to be true. If we omit the facts stated in the forepart of the instruction about which there was no dispute, the instruction would read "The Court instructs the jury that if you find and

believe from the evidence * * * that the defendant started toward the front of the truck after advising the plaintiff of his intention of moving it forward * * *." We do not see how a jury would conclude from the language that the disputed fact in question was assumed to be true. Plaintiff says that after the "initial 'if you find and believe' heading this instruction, defendant separates every other fact submitted in this instruction from all others with an 'and.'" The word "and" is a conjunction. 3 C.J.S., p. 1067 et seq. "And" as used in the instruction joined all of the facts hypothesized therein and therefrom the jury was required to find all of such facts hypothesized after the words "if you find and believe from the evidence." See Lewis v. Illinois Central R. Co., Mo., 50 S.W.2d 122, loc. cit. 124, 125 (1) (2–4); Van Loon v. St. Louis Merchants Bridge Terminal R. Co., 319 Mo. 948, 6 S.W.2d 587, loc. cit. 589, 590 (1). We rule that the instruction did not tend to mislead the jury and that it required the jury to determine the question of fact in question.

Plaintiff next says that the instruction (No. 2) was not supported by evidence, that is, that there was no evidence that the defendant advised plaintiff of his intention of moving the truck. Plaintiff referred us to a number of pages in the record to prove his point. However, we find that the record does contain evidence, to which no reference was made, which was ample to support the instruction. Note the cross-examination of the defendant:

"Q. And then with reference to the statement—now, I believe the statement that you said, that your recollection was that you did the talking rather than Mr. Nichols and that you suggested to him, or stated to him, 'You stay in the boxcar while I go and move the truck?' A. That's right.

"Q. That would be pretty much your words? A. Pretty much so, yes.

"Q. You didn't go on to explain any particular reason why you wanted to move the truck, it was just that you would move it? A. That's right.

"Q. What reason did you have, Orville, for asking Mr. Nichols to stay in the boxcar? A. Well, sir, the truck was backed up fairly close there and it was pretty hard to get down, so there was no need in both of us going through all that trouble of climbing down * * *."
The point is ruled against plaintiff.

Plaintiff's second point is that the giving of instruction No. 4 for the defendant was error. The instruction reads as follows: "The Court instructs the jury that if you believe and find from the evidence in this case that when defendant walked around his truck he left plaintiff in a position of safety, and if you find that defendant by the exercise of ordinary care would have had no reason to believe that plaintiff was going to leave such position, then you are instructed that there was no duty on defendant to make a search for plaintiff nor to keep his truck still until he discovered plaintiff's whereabouts; and if you further find that defendant entered and moved his truck in a normal and ordinary manner, and in so doing exercised ordinary care, if you so find, then you will find the issues in favor of defendant." Plaintiff's first objection to this instruction is that "there is no evidence that when defendant walked around his truck he left plaintiff in a position of safety." In the argument, plaintiff says, "If it were conceded by plaintiff, or undisputed in evidence, that the 'operation' was one continuous, uninterrupted progress of events where defendant left plaintiff in the boxcar, got down therefrom, walked around the truck, got in it, and moved off with the truck, it would perhaps not be valid for us to complain of the lack of evidence as to plaintiff's position when defendant walked around the truck; * * *." We hold that the evidence given by the defend-

ant justified a finding that the "operation," as plaintiff called it, of defendant leaving the boxcar and going around the truck "was one continuous, uninterrupted progress of events." Note the defendant's evidence:

"Q. Then, Orville, what was the next thing that happened after you finished the load and stood there, what was the next thing that was said and done either by you or by this man who has brought this lawsuit against you? A. Well, as I remember it, I told him to stay in the boxcar and I got down on the right-hand side of the rear of the truck, walked around and got in, released the brake and rolled up.

"Q. What was the purpose of your getting in and letting the truck roll forward? What did you want to do that for? A. Well, there wasn't room enough to get in between the boxcar and truck to tie it down and it would have been hard to tie it down on an incline like that so I left it roll up on a level.

"Q. You wanted to reach level ground so you'd have room to get around and tie the rope down, is that right? A. That's right.

"Q. Now, when you got out of the boxcar, were you on the right side of the truck or the left side? Does your memory serve you on that? A. I was on the right side.

"Q. Where was Mr. Steffan the last time you saw him there during that operation? A. You mean Mr. Nichols, don't you?

"Q. I beg your pardon, sir. Yes, Mr. Nichols. A. The last time I saw him he was in the boxcar."

Plaintiff's next complaint is that the instruction permitted the defendant, "and not the jury, to make a determination of what was due care under the circumstances according to his own judgment or reasoning." Instructions given in any case must be read and considered together. In this case, the court gave an instruction (No. 5) defining "ordinary care." It reads as follows: "The Court instructs the jury that the term 'negligence,' as used in these instructions, means a failure to exercise ordinary care.

"You are further instructed that the term 'ordinary care,' as used in these instructions, means such care as an ordinarily careful and prudent person would use under the same or similar circumstances as those shown to you in the evidence."

When this instruction is considered in connection with instruction No. 4, the jurors were advised that "if you find that defendant by the exercise of ordinary care (that is, such care as an ordinarily careful and prudent person would use under the same or similar circumstances) would have had no reason to believe that plaintiff was going to leave such position," etc. The instruction given required the jury to apply the proper yardstick to measure the degree of care to be exercised by the defendant. Plaintiff cited the case of Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105, and Wilt v. Moody, Mo., 254 S.W.2d 15, and 65 C.J.S., Negligence, § 5 c (2)(a), pp. 354–360. We have no fault to find with the cases or the text cited. In the Beahan case, the plaintiff sued the Public Service Company for damages because of injuries sustained when she alighted from one of defendant's busses. The charge of negligence was that the bus driver stopped at a point where, due to defects in the street, it was dangerous for passengers to alight. The court condemned an instruction which, in so far as pertinent here, read, in substance, that if the operator of the bus "having seen said defect, would not, in the exercise of the highest degree of care, have considered said defect to be dangerous, * * *." [361 Mo. 807, 237 S.W.2d 106] The court pointed out that the instruction left the

question of whether the defect in the street was dangerous to the driver of the bus. The court there said, 237 S.W.2d loc. cit. ·107 (1, 2), "The law 'does not permit him ·to make the determination of what is, and what is not, due care under the circumstances, according to his own judgment.' 38 Am.Jur. 679, § 33." We think the instruction in the case before us is distinguishable from the instruction condemned in the Beahan case.

The St. Louis Court of Appeals had a problem similar to the one before us in the case of Hall v. St. Louis Public Service Co., 248 S.W.2d 33, loc. cit. 36, 37(3). The court there held that an instruction was not erroneous which read, in substance, that if the jury believed that the breaking of the streetcar window, which caused the plaintiff's injuries, "was caused by a rock coming from outside of said car and through said window, and if you further find that in the exercise of the highest degree of care in the operation of said streetcar *defendant had no reason* to anticipate such occurrence, then plaintiff is not entitled to recover * * *." (Emphasis ours) In the case before us, the instruction had a similar requirement, that is, "if you find that defendant by the exercise of ordinary care would have had no reason to believe that plaintiff was going to leave such position" of safety. We rule that the instruction is not subject to the criticism leveled against it by plaintiff.

■ In the third and last point, plaintiff says that the trial court erred in refusing to give an offered instruction to the effect that even though the defendant gratuitously aided plaintiff in the task of hauling the hay, yet under the law it was his duty to exercise ordinary care. It was in evidence that the Steffan family and the Nichols family gratuitously helped each other and borrowed trucks from each other. In other words, as farmers often do, they "swapped work." We hold that there was no abuse of discretion in refusing this instruction. Whether defendant was or was not being paid for his help was not an issue in the case.

The judgment is affirmed.

. All concur.