VALLIANT, J.
This is a suit on a bond. The petition alleges that on May 1, 1896, plaintiff sold to defendant Carmody the privilege of selling refreshments in its grand stand for a period of forty-nine days, beginning May 6, 1896, for the sum of $16,709, to be paid in stated instalments during that period; that the bond in suit was given to secure those payments; that Carmody paid $10,264.43, leaving a balance of $6,444.57 unpaid, for which this suit is brought.
Defendants answered admitting the execution of the bond, and pleaded certain facts by way of avoidance, whereupon the plaintiff moved the court for a judgment for the amount sued for on the pleadings, which motion the court sustained, and rendered judgment accordingly, from which judgment the defendants after proper course, appealed to this court.
The question on this record is, taking the defendants’ answer to be true, is the plaintiff entitled to a judgment? That portion of the answer to be considered is as follows:
“Further answering, the defendants state that the said plaintiff ought not to have and maintain its action, for that the contract first alleged in said petition and the writing obligatory therein declared on were, and are, based upon an *573 illegal consideration, and are, and were, at the time of their execution, void and of no effect, in that, at the time when the said contract and said writings obligatory were executed and continuously down to the expiration of the period of time by them covered, the said plaintiff was engaged in maintaining, operating and controlling a race track in the city of St. Louis, on which said race track, as part thereof, was, and is, situated the grand stand specified in said petition; that on said race track during the said period there were conducted by said plaintiff, from day to day, Sundays excepted, horse races for purses offered and paid to the winners by said plaintiff; that upon the said race track so operated, controlled and conducted by said plaintiff, persons were admitted and permitted by said plaintiff to attend for the purpose of gambling and betting upon the result of the said horse races so conducted; that said persons attended upon the said horse races in large numbers and gambled and bet upon said races large sums of money with the consent, connivance and procurement of the said plaintiff; that the furnishing of liquors, refreshments and cigars by the defendant, Patrick J. Carmody, under the said agreement first alleged in said petition, was contracted for by the said plaintiff by reason of the contemplated attendance of said persons for the purpose and with the expectation of gambling upon the said race track of said plaintiff, and that such refreshments, cigars and liquors, as were furnished by defendant, Patrick J. Carmody, under the said agreement, were so furnished by reason of the attendance upon the said race track of large numbers of persons for the purpose of gambling and betting upon the said races there maintained and conducted; that the proceeds of the privilege to sell liquors bought by said defendant Carmody were used by said plaintiff in making up and paying the purses raced for upon it, said race track as aforesaid, and in defraying the expenses of conducting its race track; that all necessary appliances, apparatus, records and paraphernalia for betting *574 and gambling were provided and permitted to be used for such purposes by the said plaintiff upon its race track, to wit, in the same grand stand and houses and buildings appurtenant thereto; and that the grand stand of the said race track and the appurtenances thereunto belonging constituted and were during the period covered by said agreement, a common gaming house and public nuisance conducted, maintained and permitted by the said plaintiff; in that the said plaintiff in a building covered with a roof and inclosed at the sides, adjacent to, and connected with said grand stand, provided stands and booths for the occupancy of gamblers, book-makers and pool-sellers, who occupied the same and offered odds upon the races run on the race track of plaintiff and accepted bets made thereon by the said persons attendant as aforesaid upon the said races; that the privilege of making books, by which is meant taking and receiving bets by the said gamblers occupying said booths and stands, was sold by the plaintiff to some gambler, or gamblers, who in turn sublet the privilege to many other gamblers, and the proceeds of the sale of said privilege and of the privileges granted said Oarmody and others were used by said plaintiff in making up and paying said purses and defraying the expenses of its said race track; and that the said attendants upon the said race track assembling there as aforesaid for the purpose of gambling, bet against the said book-makers, who posted odds at which such bets were taken upon a board, and device, and erected by them upon their respective stands and booths, and who recorded said bets upon sheets and books kept by them and upon tickets issued by them to the said respective betters; the said book-makers and gamblers thereby, by reason of the premises aforesaid, setting up, maintaining and conducting gambling devices upon the said premises of said plaintiff with its knowledge, connivance, participation and consent; and the said agreement and said writings obligatory sued on herein were made and executed with reference to .and by reason of the *575 said unlawful transactions had and to be had upon the said premises of said plaintiff, and the said sum and sums of money agreed by said defendant Carmody to be paid, and such sum or sums as were paid by him under said contract for the privilege aforesaid were necessary to be used, and as paid were used by the plaintiff in supplying, operating and maintaining the gambling devices hereinbefore specified, without which said devices, appurtenances and paraphernalia, the said business of gambling could not have been carried on or maintained by said plaintiff; that the privilege so acquired by said Carmody is the same as is set forth in said petition, and the money agreed to be paid by said Carmody was in connection with and for the maintenance of said common gaming-house as aforesaid, and is the same consideration that is mentioned in said contract referred to in said petition.”
There were other facts pleaded by defendants, but the counsel on both sides have limited their discussion to the question as to the sufficiency of the facts stated in that portion of'the answer above quoted, and we will follow their suggestion.
Under the law of this State it is not unlawful to keep a race track, and to induce horse races thereon by giving prizes to the winners. And it is not unlawful, under license, to provide stands to dispense refreshments to persons attending the races, making- it more attractive to patrons of the race track, provided there is no ulterior consideration entering into the transaction of an unlawful character. But betting, on a horse race is gambling. [Shropshire v. Glascock, 4 Mo. 536 ; Boynton v. Curle, 4 Mo. 600 ; Hayden v. Little, 35 Mo. 418.] And keeping- a gaming house furnished with the means and facilities for gambling to which the public is tempted, invited or permitted habitually to attend for the purpose of gambling, whether it be by betting- on a horse race in sight, or at a distance, is the keeping of a common gambling-house within the meaning- of the law. [Bollinger v. Com., *576 38 Ky. 574 ; People v. Weithoff, 51 Mich. 203.] In the former case just cited, the Court of Appeals of Kentucky said: “That a house where persons are permitted habitually to assemble to bet and win or lose money, whether with each other or with the owner, or whether on result of a horse race or turn of a playing card, is, in meaning of the law, a gaming house, and, therefore, a common nuisance, is too well settled and plain for discussion.” And in the Michigan case Judge Cooley said: “The characteristics of such a room must be readily apprehended and understood. If the room is one whose use is intended to facilitate gaming operations, and where sporting characters are invited to congregate for purposes of illegal amusement and gain, and to stake money or other thing of value upon trials of chance, skill or endurance, we seem to have everything necessary to constitute a gaming-room.”
In Swigart v. People, 151 Ill. 284, the plaintiff in error was indicted and convicted of keeping a common gaming house under a statute similar to ours. He was the secretary of the Garfield Park Club, which kept a race track near Chicago; a part of the revenue of the club was obtained from space and privileges rented to book-makers and pool-sellers. This space was located under the grand stand. It was covered but open on the sides. The following- are extracts from the Illinois court in that case: “That book-making and pool-selling are each betting upon the horse race or particular event upon which they are made or sold, is not questioned. In the first, the betting is with the book-makers; in the second, the betting is among the purchasers of the pool....... It is shown that large numbers of persons were present and permitted to assemble within said room during the racing-season, who did bet upon the result of the races. ...'.. .It is clear, therefore, that the room or space within the grand stand, within the inclosure of said Garfield Park Club, kept as we have seen, for the purpose of book-making and selling *577 of pools contingent upon the result of horse races, the seller or buyer of the pools winning the money wagered upon the race or losing it, was a common gaming house within the meaning of the statute.......That drawing together of large numbers of persons, from all classes of society, in and about the betting rooms and betting rings of the Garfield Park Club, so that they were brought into familiarity with gambling in its various forms as there practiced, was demoralizing, can admit of no question; and that the keeping of the places where persons were procured or permitted to assemble together for the purpose of betting and winning and losing money falls within both the letter and spirit of section 127 of the Criminal Code admits of no controversy.”
The keeping of such a house being forbidden by law, any contract made in furtherance of the purpose for which it is kept or to render it more tempting or attractive to the public who would patronize it for that purpose is illegal and courts will not enforce it. It makes no difference how fair the contract may be on its face, or how innocent in its own isolated terms, if it is designed to encourage an object forbidden by law, the courts will have nothing to do with it. [Downing v. Ringer, 7 Mo. 585 ; Ashbrook v. Dale, 26 Mo. App. 649 ; Friend v. Porter, 50 Mo. App. 89 ; Sprague v. Rooney, 104 Mo. 358.]
In the ease last cited this court per Sherwoob, P. J., said: “If there be one principle of the law well settled it is this: . . .That the moment the illegality of the contract is disclosed the gates of legal and equitable relief and remedy are at once shut against the party who seeks to enforce such a contract.”
The learned counsel for respondent, referring to the cases cited above, in their brief say: “The case at bar is very different from any of those. Here was a public race course, the maintenance of which was not in violation of law. Races may lawfully be run and purses may lawfully be paid *578 to winners. People may attend to witness races, and their attendance is not in violation of law. Retting upon these races is unlawful, but that does not interfere in the racing,, and so the agreement to pay the purses would be enforced at the suit of the winners, because in that agreement there was nothing in contravention of law or public policy. Men are-employed to care for the horses, blacksmiths are engaged to-shoe them, but that there is betting upon the races does not taint their work with illegality. The contract with the defendant was for the right to sell refreshments upon the ground to whosoever desired them, not alone to- those who attended for the purpose of wagering, but without regard to the purpose of their attendance.”
. But that statement does not compass the whole case. To it should be added that the betting booths were a part of the plaintiff’s race track scheme, from which by sale, to be used for book-making, the plaintiff derived revenue, and that the object of providing refreshments was in aid of that scheme.
A scheme lawful in itself can not be made a cover for one that is unlawful. The plaintiff’s race track and grand stand were lawful to be kept, but when it adds to those the-gambling booth, and runs them together, and then makes a contract that is appurtenant to either and appurtenant to both, courts will not entertain it merely because in its application it was not limited entirely to the unlawful purpose. “If the house in question had been opened and used for a double purpose, viz: as an honest social club for those,who do not desire to play, as well as for the purposes of gaming* for those who did, -it would not the less be a house opened and kept for the purpose of gaming.” [Jenks v. Turpin, 13 Q. B. Div. Law Rep. 505. See, also, White v. Wilson’s Adm’r, (Ky.) 38 S. W. Rep. 495].
The argument on the part of respondent is that since the selling of refreshments on a race track is an act in itself *579 not unlawful, selling the privilege to do so is not unlawful, and the contract of sale of the privilege being thus lawful as between the seller and the buyer, it is not rendered unlawful because some persons may see fit to bet on the races. There is no disputing of that proposition in the abstract, and it may be carried farther and this be added: That the contract under those circumstances would not be rendered unlawful although at the time of making it the parties knew that persons were liable to bet on the races. But if the parties made the contract in contemplation of the business the, plaintiff was to conduct, both that which was lawful and that which was unlawful, and the subject of the contract was a feature of that business and designed to promote it, the contract is unlawful. A contract lawful in itself can not be rendered unlawful by the act of a third person converting the subject of the contract to an unlawful purpose, but if the contract apparently lawful was made with a view to facilitate or encourage the unlawful act of a third person, it is .unlawful.
In Michael v. Bacon, 49 Mo. 474, relied on by respondent, the. suit was on account for labor and material furnished in papering a house on Fourth street in St. Louis. The defense was that the house was furnished for the- purpose of using it for a gambling house, and that plaintiff knew it. The court said that whilst there was evidence to show that plaintiff knew the purpose for which the house was intended, yet “there was no evidence that the plaintiff’s purpose, in supplying the materials and fitting up the house, was that it should be used as a gambling houseand held that he was entitled to recover. It is therefore not the unlawful use to which the subject of the contract is liable to be put, but the intention of the parties that it be so used that vitiates the contract. The court in that case refers to Pearce v. Brooks, 1 Court of Exch. Law Eep. 213, and says of it: “The point made in that case was that a man who hired a brougham to a prostitute, knowing that she was a prostitute, and knowing that she intended *580 to use the brougham for purposes of display and attraction,, could not recover for the hire, because such knowledge in that case amounted to an intention or design on his part to aid the prostitute in her illegal calling.”
Since, as we have seen, the plaintiff’s business as a race track proprietor has two branches, one lawful and the other unlawful, and since the subject of the contract in suit relates as well to the one branch as to the other, we are justified in leaving out of view its relation to that part of plaintiff’s business which is lawful and consider it only in its relation to the unlawful branch. In that respect it is simply a contract of sale by plaintiff to defendant of the privilege of selling’ liquors, cigars and other refreshments to the patrons of plaintiff’s gambling house during the racing season. In that aspect it is as much unlawful as if the keeper of a bawdy house-had sold the privilege to furnish refreshments to the patrons of her house. The law makes no difference in the two-kinds of establishments. In the same section and in the very same sentence they are both condemned. Section 3811, Revised Statutes 1889, is: “Every person who shall set up or keep a common gaming house, or bawdy house or brothel or house of assignation, shall, on conviction,” etc.
The answer avers, and the plaintiff, by its motion admits, that in connection with its race track and grand stand it has provided booths fitted up and supplied with all the gambling devices, appurtenances and. paraphernalia requisite for bookmaking, -which it rented for money to gamblers to be used for that purpose in connection with the races to be run on its track, and by the consent, connivance and procurement of plaintiff large numbers of people assembled at those booths to gamble by betting on the races, through the devices so supplied. According to all the authorities on the subject that have been brought to our attention those facts constitute the plaintiff the keeper of a common gaming house.
The answer further avers and the motion admits that the contract in suit was made with the design and purpose on the *581 part of both plaintiff and defendant of furnishing the liquors, cigars and refreshments to the frequenters of the plaintiff’s gambling house while it was in- operation.
Plaintiff deriving a portion of its revenue from the sale of these gambling booths, and making this contract in contemplation of the concourse of people to be tempted within its precincts, the natural inference is that its design was to make the place more attractive to its patrons by adding to the excitement of racing and gambling that of drinking the liquors and partaking of the other refreshments that the contract contemplated, the one excitement feeding the other, thus prospering the business of the gamblers, and enhancing the market value of the plaintiff’s booths.
Counsel for appellant in their brief say: “Gambling upon a race track is only the most nefarious degree of gambling known to the vicious propensities of mortal men. It has no redeeming quality. It is degrading to the last degree.. Its history is the abhorrent story of crime, defalcation, embezzlement, chicanery, deceit and ruin. No court can regard with favor a litigant which sues to enforce a contract made to foster and encourage such a fatally destructive vice.” The learned counsel express the truth with great force.
Upon the facts pleaded in the answer the contract in suit is founded on an unlawful consideration, is against public policy, and is invalid; the court erred in rendering judgment for the plaintiff on the pleadings. The judgment of the circuit court is reversed and the cause remanded to be tried in conformity with the law as herein expressed.
All concur.