Baer v. Glaser.

## ADOLPH BAER et al., Appellants, v. MORRIS GLASER et al., Respondents.

### St. Louis Court of Appeals, November 19, 1901.

1. **Usage of Trade: WHEN BINDING ON PARTIES TO A CONTRACT.** A usage of trade, general, uniform, certain and reasonable, is always recognized and enforced by the courts.

2. ———: **KNOWLEDGE OF PARTY AS TO CUSTOM.** But before it is binding on a party, it must either be so widespread that knowledge will be imputed to him, or he must be shown to have actual knowledge of it.

3. ———: **IMMORAL CUSTOM.** There is nothing immoral in the custom of selling and delivering ten ounces of thread to the pound, in view of the fact that a customer pays for no greater weight of thread than he buys.

4. ———: ———: **EVIDENCE OF CUSTOM.** And, in the case at bar, it was competent to show that ten ounces of silk thread signified, between dealers, not a full pound, but a trade pound.

Appeal from St. Louis City Circuit Court.—*Hon. Selden. P. Spencer*, Judge.

AFFIRMED.

STATEMENT OF THE CASE.

Plaintiffs and their predecessors, Baer, Seasongood & Company, to whose rights and liabilities in regard to the transactions which are the subject-matter of this action plaintiffs succeeded, bought spool silk thread in large quantities from defendants for many years, and this action is to recover damages for alleged deficiencies in the weights of thread.

The petition is in four counts. The first, for overpayment on account of underweights in the thread sold and delivered between September, 1894, and February, 1898; the second, for similar shortages between February, 1898, and March, 1899. Both of these counts related to thread called "black silk short." The third count was for overpayment by reason of underweights in colored silks, bought between August, 1894, and January, 1899. Count four was for discounts to which plaintiffs claimed they were entitled on purchases of thread. The total amount claimed aggregated one thousand five hundred and sixty-nine dollars and thirteen cents.

The answer admitted plaintiffs' claim of three hundred and ten dollars for shortage in weights of colored silk thread, and averred that matter had been adjusted between the parties and it was agreed plaintiffs should be credited with it on defendants' account against them. The answer then sets up a counterclaim on an unpaid account for goods sold and delivered to plaintiffs amounting to four hundred and twenty dollars and fifty cents.

Judgment was prayed by defendants against plaintiffs for one hundred and ten dollars and fifty-three cents, being the excess of the counterclaim over the rebate which defendants admitted plaintiffs were entitled to be credited with.

It should be remarked that this admitted rebate was claimed by respondents to have grown out of a mistake made by one of their employees and to have no connection with the

litigated issues.   The controversy arose from the spools of thread which were sold by defendants to plaintiffs holding only ten ounces of thread to the pound, instead of twelve, defendants claiming this was authorized by a custom of trade which was general, and of which plaintiffs had full knowledge during all the transactions between them.   Plaintiffs, however, denied knowledge of the usage or that it was binding on them.   It seems, one kind of black thread, which is the subject of controversy, was put up on spools called "1-4 ounce," packed in boxes holding twenty-four spools each, two of which boxes contained ten ounces of silk and were known in trade as a "pound of 1-4 ounce."   Another kind of thread called "full ounce" was packed twelve spools in each box, each spool containing five-sixths of an ounce of thread, and a box ten ounces.   Each of these spools had stamped on the end "5-6 ounce" and the package was called in trade a "pound of full ounce."   The price for full ounce and 1-4 ounce was identical, the weight being the same—ten ounces to the pound.

This is all we think necessary to state about the thread except to say that, although it was sold ten ounces to the pound, as a matter of fact, the buyer was only charged for ten ounces and not for twelve.   There were brands of silk thread put up twelve ounces to the pound and the price the buyer paid depended on whether he bought twelve-ounce-to-the-pound thread or ten-ounce-to-the-pound.   In other words, the buyer only paid for the quantity he got.

Plaintiffs' claim for a discount on purchases which had not been allowed, was also based on an alleged trade usage that a purchaser was entitled to a discount if he paid for the goods within a certain time.

The case was referred by the trial court to a referee, who, after taking voluminous testimony, reported in favor of the defendants, both as to their counterclaim and as to all the claims of plaintiffs against them, except as to the rebate which

they admitted was due plaintiffs.  We think it unnecessary
to set out his report in full.  It is quite long.  The import-
ant facts, in addition to those above stated, were the exist-
ence of a general trade usage or custom among dealers in silk
thread, in packing and selling certain grades of thread ten
ounces to the pound instead of twelve, that the plaintiffs all
through the transactions in controversy had actual knowledge
of the existence of such usage and bought thread with refer-
ence to it; and that there was no regular, uniform and general
custom among dealers in regard to an allowance of discount
on silk thread to local buyers.  Further, that the matter of
discount was mentioned between plaintiffs and defendants at
one or more times during their dealings, and whenever it was
mentioned, defendants stated to plaintiffs they could not and
would not allow any discount, but that their prices were net.

The lower court adopted the findings and report of the
referee and entered judgment for defendants in accordance
therewith.

*Lubke & Muench* and *Chester H. Krum* for appellants.

(1)   Contracts may be made between parties by corre-
spondence or by telegrams.   Statesberry v. Massengale, 13
Mo. App. 221; Whaley v. Hinchman, 22 Mo. App. 483; Can-
gas v. Mfg. Co., 37 Mo. App. 297; Lancaster v. Elliot, 42
Mo. App. 503; Eagle Mill Co. v. Caven, 76 Mo. App. 458;
Lungstras v. German Ins. Co., 48 Mo. 201; Robinson v. Rail-
road, 75 Mo. 494; Egger v. Nesbit, 122 Mo. 667.   (2) The
meeting of the minds of the parties to such a contract is ac-
complished, in contemplation of law, so soon as the offer of
the one is accepted by the other, although the former may not
have yet received the notice of acceptance.   Lancaster v.
Elliot, 42 Mo. App. 503; Lungstras v. German Ins. Co., 48
Mo. 201.   And whether or not the minds have met is deter-

mined by the courts, not by what the parties may have secretly intended, but by their conduct, acts and express declarations. Haubelt v. Rea & Page Mill Co., 77 Mo. App. 672; Brewington v. Mesker, 51 Mo. App. 348; Machine Co. v. Cresswell, 58 Mo. App. 471. (3) The referee and trial court having committed error in giving effect to the illegal practice, usage or custom, the judgment must be reversed. The extent to which this error was prejudicial to appellants can not be determined by the appellate court in this case, and can not be met by an assertion that it was harmless and that the judgment was for the right party. Linz v. Mass. Mut. Life Ins. Co., 8 Mo. App. 363; Cravens v. Gilliam, 63 Mo. 28; Berryman v. Cox, 73 Mo. App. 67; Fairchild v. Cresswell, 109 Mo. 29.

*Albert Arnstein* for respondents.

(1) Where a contract is made as to a matter about which there is a custom which is so general, uniform and notorious that knowledge of it may be presumed to be or is directly known to the parties, such custom is to be understood as forming a part of the contract. Soutier v. Kellerman, 18 Mo. 509; Evans v. Western Brass Mfg. Co., 118 Mo. 549; Price v. Van Stone, 40 Mo. App. 207; Connable v. Clark, 26 Mo. App. 162; Kimball v. Bremer, 47 Mo. 399; Fitzsimmons v. Academy of Christian Brothers, 10 Mo. App. 595, 81 Mo. 37; Martin v. Ashland Mill Co., 49 Mo. App. 23; Cole v. Skrainka, 37 Mo. App. 427. (2) The trade term used in ordering silks was for so many pounds "full ounce," or, so many pounds "1-4 ounce." At no time was there an order given for a given number of pounds of silk unless the word "pounds" was qualified by the trade term "1-4 ounce" or "full ounce." The terms, "pound of 1-4 ounce" and "pound of full ounce" by the custom in the silk trade, meant

ten ounces of silk put up either in forty-eight spools or in twelve spools to the "trade pound." In Price v. Van Stone, 40 Mo. App. 207, an action for damages for a breach of contract to deliver a given number of carloads of wheat, evidence was admitted of what is customary to consider a "carload of wheat."

GOODE, J.—We think this case is controlled by precedents in this State directly in point. A usage of trade general, uniform, certain and reasonable, is always recognized and enforced by the courts. Before it is binding on a party, however, it must either be so widespread that knowledge will be imputed to him, or he must be shown to have had actual knowledge of it. In this case, plaintiffs must be charged with both actual and constructive knowledge, as the findings below were that way.

We see nothing immoral in the custom in question of selling and delivering ten ounces of thread to the pound, in view of the fact that a customer paid for no greater weight of thread than he bought. In all commercial affairs, contracts are supposed to be made with reference to the usages prevailing in the special business which is the subject-matter of the contract, and the meaning of words and terms used by dealers is adopted by the courts in construing their agreements, unless the custom contravenes some settled rule of law, is unreasonable, or is positively excluded by the very language of the contract. Nor is it sufficient to exclude consideration of a usage in the interpretation of a contract that the words of the latter are unambiguous if taken in their ordinary sense. Resort may still be had to extrinsic evidence to show they were not used in their ordinary sense, but in a sense attached to them by some commercial usage. So we think it was entirely competent to show, in this case, that ten ounces of silk

thread signified, between dealers, not a full pound, but a trade pound.

It was held by the Supreme Court that it might be shown by a well-established custom, that two packages of shingles of a certain thickness, constituted a thousand, although in fact fewer than a thousand were in the packs. Soutier v. Kellerman, 18 Mo. 509. In that case, the plaintiff had ordered four thousand shingles and got only twenty-five hundred. Defendant was allowed to prove that by the custom of the lumber trade, he had filled the order.

This subject was fully gone over in a case where marble slabs were ordered of a specified thickness, which, when delivered, did not come up to the terms of the order and evidence was produced to show that the slabs, when sawed and before they were polished, were of the thickness designated, and that in the marble trade an order for slabs of a certain thickness, prepared for use, meant they should be of that thickness when they came from the saw. The buyer objected, claiming that under the terms of his order, the seller was bound to furnish slabs of the thickness specified when finished for use. This contention was overruled. The court said: "It does not follow that evidence of usage can only be received where the words of the contract are ambiguous. Such evidence is often received to show that words are used in a sense different from their ordinary meaning, as in Soutier v. Kellerman, supra. Such evidence is received on the theory that the party knew of the usage or custom and contracted with reference to it, and in such cases the evidence does not add to or contradict the language used, but simply interprets and explains its meaning." Evans v. Western Brass Mfg. Co., 118 Mo. 548. See, also, Price v. Vanstone, 40 Mo. App. 207; Cole v. Skrainka, 37 Mo. App. 427; Smith v. Wilson, 3 Barn. & All. 728.

The finding below was that the appellants had actual

knowledge of the fact, all along, that they were buying thread put up ten ounces to the pound, instead of twelve. That finding we accept as true, and shall it be said they are entitled to a rebate, because they did not get twelve ounces to the pound? In such circumstances, it is immaterial whether the custom claimed existed or not. Plaintiffs simply ordered so much silk and got all they bought or paid for. To compel defendants to pay back to them part of the price, would be to fix a price for the thread below what the parties themselves fixed it at in their dealings. The authorities above cited are conclusive, and the case needs no further discussion.

The judgment is affirmed. All concur.