FLOYD E. JACOBS, Administrator of Estate of A. HATTREM ET AL., v. ABE DANCIGER ET AL., Appellants.—41 S. W. (2d) 389.

Division One, July 28, 1931.

*Henry L. Jost* and *Ringolsky, Friedman, Boatright & Jacobs* for appellants.

462

*J. M. Johnson* and *Charles H. Thompson* for respondents.

464

GANTT, P. J.—This came to me on reassignment. It is an action by a vendor against a vendee to recover damages for breach of contract. On April 23, 1920, A. Danciger, representing the defendants, of Kansas City, Missouri, entered into a written contract at Kansas City, Missouri, with A. Hattrem, representing the plaintiffs, of Salem, Oregon, wherein it was agreed that plaintiffs would sell and defendants would buy 150 bales of choice brewing Yakima or Oregon hops of the crop of 1920 at 85 cents per pound, delivered f. o. b. cars at Kansas City, Missouri—50 bales in October, 50 bales in November, and 50 bales in December, 1920. Thereafter the market price of hops declined to 47 cents per pound. On September 23 and 24, 1920, defendants notified plaintiffs that they would not receive said hops if shipped and that they would not comply with the terms of the contract. Under this contract no hops were shipped by plaintiffs to defendants.

Thereafter this suit was instituted. The petition is conventional with an allegation that by usage of trade, the term "bale of hops" in the contract meant 200 pounds of hops and was so understood by plaintiffs and defendants at the time of execution of the contract.

Defendants answered by admitting the execution of the contract and alleging that it was void under the Statute of Frauds for failure to fix the quantity of hops sold, and also alleging that the contract was void because the hops were sold by plaintiffs with knowledge that defendants intended to sell the hops in packages containing certain appliances and other substances to be used in the manufacture of "home brew," and that plaintiffs with this knowledge, aided and abetted defendants in their intent to violate said law. The reply was a general denial. On the trial the jury returned a verdict for $9,000. Judgment accordingly, and defendants appealed.

I. Defendants contend the quantity of hops is not fixed by the contract, and for that reason the contract is void under the Statute of Frauds. The quantity is fixed at 150 bales at 85 cents per pound. There was evidence tending to show, and the jury found, that by trade usage a bale of hops weighed 200 pounds. The evidence was admissible under the well settled rule, which follows:

"Valid usages concerning the subject-matter of a contract, of which the parties are chargeable with knowledge, are by implication incorporated therein, unless expressly or impliedly excluded by its terms, and are admissible to aid in its interpretation, not as tending in any respect or manner to contradict, add to, take from, or vary the contract, but upon the theory that the usage forms a part of the contract." [17 C. J. 492, 495, 503-4.]

The rule is approved by decisions of the appellate courts of the country. [Ellis v. Casey & Co., 4 Ala. App. 518; Brewer v. Horst & Lachmund Co., 127 Cal. 643, 50 L. R. A. 24; Miller v. Stevens, 100 Mass. 518; Taylor v. Briggs, 12 Eng. C. L. R. 245, 2 Carr. & Payne, 525; Harris & Co. v. Vallee & Co., 29 Ga. App. 769; Nut House v. Pacific Oil Mills, 102 Wash. 114; Wright v. Seattle Grocery Co., 105 Wash. 383; Soutier v. Kellerman, 18 Mo. 509; Baer v. Glaser, 90 Mo. App. 289; Evans v. Western Brass Mfg. Co., 118 Mo. 548, 24 S. W. 175; Jungkuntz v. Carter, 254 S. W. 359; Dinuba Farmers' Union Packing Co. v. Anderson Grocery Co., 182 S. W. 1036; Viernow v. City of Carthage, 123 S. W. 67; Carter v. Western Tie & Timber Co., 184 Mo. App. 523, 170 S. W. 445; Snoqualmi Realty Co. v. Moynihan, 179 Mo. 629, 78 S. W. 1014; Asbury v. Evans, 182 S. W. 785; Wallace State Bank v. Corn Exchange Bank, 282 S. W. 86; Colorcraft Co. v. American Packing Co., 216 S. W. 831.] This trade meaning of the word "bale" became a part of the contract and fixed the quantity purchased at 30,000 pounds.

In this connection defendants challenge the refusal of an instruction, which follows:

466

"The court instructs the jury that if you believe from the evidence at the time the contract of April 23, 1920, was entered into by plaintiffs with the defendants, the number of pounds of hops agreed to be purchased by the defendants from the plaintiffs was verbally agreed upon, then your verdict must be for the defendants."

If the quantity purchased was fixed by the contract, a verbal agreement, if any, fixing the amount would not authorize a verdict for defendants. The court ruled correctly in refusing the instruction.

II. Defendants next challenge the giving of an instruction which follows:

"Although you may believe from the evidence that at the time of entering into said contract of sale in evidence the said A. Hattrem represented and stated to the defendants that the sale of said home brew packages which defendants were selling and intended to continue selling on the market was not in violation of the law, and that the courts had already decided it was not in violation of the law; unless you further believe and find from the evidence that defendants relied in part upon such statement and representation, and except for such relying, if any, would not have entered into such contract for the purchase of hops, you will disregard the defense that the sale of said hops was induced by such representations or statements, if any."

In the amended answer on which the case was tried, it was alleged "that plaintiffs represented and informed and counseled defendants that courts had decided it was legal and they knew it was legal to sell packages mentioned containing hops for the purposes mentioned. That defendant relied on said representations; that same were false and the signature of defendants was obtained by plaintiffs making said false representations."

On this issue the defendant, Abe Danciger, who represented the defendants, testified that Hattrem, who represented the plaintiffs, told him of Federal court decisions upholding the sale of "home brew" packages, and expressed the opinion that such business was lawful. He also testified that he relied on said statements. On cross-examination, he gave testimony indicating that he did not rely on those statements. Thus an issue of fact was raised for submission to the jury. Defendants contend that the instruction was a direction to the jury to disregard those statements as evidence in considering the issue of solicitation, aiding, abetting and counseling on the part of Hattrem. The instruction did not direct a verdict for plaintiffs and did not direct the jury to disregard those statements as evidence in considering other issues. The instruction only dealt with

the issue of false representations and could not have been misunderstood by the jury.

III. Defendants next challenge the giving of another instruction, which follows: .·

"The jury are instructed that mere knowledge alone without assent thereto or participation therein on the part of the sellers at the time of entering into a contract for the sale of a commodity that their purchaser intended to use such commodity as an ingredient in a mixture, the sale of which would be a violation of law, would not in itself invalidate such contract; there must be some act or agreement or consent of the sellers in furtherance of such unlawful purpose. If you find and believe from the evidence that at the time of entering into the contract of sale, sellers did not know that the defendants intended to use said hops in the manufacture and sale of home brew packages in violation of law and did nothing or agreed to do nothing which would be in furtherance of such purpose, nor consent to such violation, you will disregard the defense that the contract in evidence was a contract in violation of the law."

There was evidence tending to show that plaintiffs did not know, at the time of the execution of the contract, that defendants intended to sell the hops to be used in the manufacture of "home brew." There was also evidence tending to show they knew at said time of said intention of defendants, and encouraged them in purchasing the hops for such purpose.

Defendants contend that the sale with mere knowledge on the part of plaintiffs of its intended use by defendants was a violation of Section 18, Title II, National Prohibition Act; U. S. C. A., Title 27 Section 30, and for that reason contend the contract is invalid. The section follows:

"It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

Under this statute, "a design or intent to use the things sold in an unlawful way must be the design or intent of the seller, and not of the buyer." · [Stroh Products Co. v. Davis, 8 Fed. (2d) 773, 1. c. 776; Hammerle v. United States, 6 Fed. (2d) 144 (C. C. A. 6); Weinstein v. United States, 293 Fed. 388 (C. C. A. 1); United States v. Horton (D. C.), 282 Fed. 731.] And the word "design" as used means "things which are planned for the sole, or at least for the dominant, purpose of making intoxicating liquors." [United

States v. Cans Acme Malt Extract, 28 Fed. (2d) 213.] Hops have many legitimate uses and do not fall within the meaning of that word. Therefore, the pertinent part of the statute follows:

"It shall be unlawful to . . . sell . . . any . . . substance (hops) . . . intended (by the seller) for use in the unlawful manufacture of intoxicating liquor."

Defendants argue that under the statute, knowledge alone is evidence from which the jury may find that plaintiffs intended the hops for use in manufacturing intoxicating liquor. We do not find that the question has been ruled by either the state or federal courts.

It is not expressly provided in the statute that mere knowledge by the seller of the intended use of the substance by the purchaser is a violation of law. It seems if the Congress had so intended, it would have provided that it shall be unlawful to *knowingly* sell any substance intended by the purchaser for such use. It did not do so, but fixed the intention of the seller in making the sale as the test of legality. For this reason we think the word "intended" was not used in the sense of mere knowledge. It means more than mere knowledge. It means knowledge of the seller accompanied by some act on his part indicating consent to or encouragement in such use. We are encouraged in this view by the general rule, which follows:

"The authorities are not in entire accord as to the effect of the seller's knowledge merely that the buyer intends to use the subject-matter of the sale for an unlawful purpose. The better rule is that a contract of sale is not rendered illegal merely because the seller had knowledge of such fact if he did not participate in the intent to commit the illegal act or by some affirmative act aid in the furtherance of such unlawful purpose or have some interest in the performance of the illegal act. In this regard it has been said that there is no principle of law which compels a merchant to overlook the morals of his customers. And it has been further aptly pointed out that the buyer may not in fact carry out his unlawful purpose, and if the contract should be deemed illegal nothing could have the effect of purging it of its illegality and the consequence of the doctrine would inevitably be that the seller, without having participated in any illegal act, or even illegal intent, but having simply known of such an intent subsequently abandoned, would be punished with a total loss of the property sold, and that for the benefit of the party alone guilty, if guilt could be predicated of such a transaction. And because of innumerable kinds of merchandise which may be applied to improper and unlawful uses, it would be wholly impracticable as well as unwise and unjust to require the seller of all sorts of merchantable goods to scrutinize the plans and purposes of the buyer with regard to the use of the commodity, and to sell only at the peril of forfeiting the price

in every case where a jury might find that the seller had knowledge or reason to suppose the buyer intended to make an improper or un-lawful use of the article." [23 R. C. L. Sec. 134, pp. 1317-19.] To the same effect 13 Corpus Juris, page 517. And in Michael v. Bacon, 49 Mo. 474, l. c. 476, the plaintiff sued to recover for labor and material furnished in papering a house. Defendant answered that the paper was furnished and work done with the knowledge on the part of plain-tiff that a gambling business would be conducted in the house. There was evidence tending to show that plaintiff knew of such purpose. In ruling the question we said:

"If gamblers can procure work and labor to be performed, and houses to be built and furnished at a heavy expense, by mechanics and others, and then escape all responsibility under the plea that the laborer, etc., knew that such houses were intended to be used as gambling houses, then I must confess that the law, so understood, instead of being a shield, is a trap for the unwary. I am not aware of any principle of law which compels a merchant, laborer or me-chanic to overlook the morals of his customers. He is not the keeper of their morals in any sense of the word. If he sells goods to a gam-bler, the sale is perfect on the delivery, and the gambler must pay for them, whatever his purpose may have been in making the purchase. If the merchant is not to be paid out of the illicit gains of a gambler, and is not connected by contract with the object the gambler has in view, his knowledge of the purpose does not vitiate the sale. I know there is conflict in the authorities in regard to the question under con-sideration, and some hair splitting distinctions have been made, some-times sustaining and sometimes setting aside such sales; but in my judgment the weight of authority and reason is with the ruling as we here lay it down."

Defendants cite the following: Michael v. Bacon, 49 Mo. 474; Howell v. Stewart, 54 Mo. 400; Sprague v. Rooney, 82 Mo. 493; Sprague v. Rooney, 104 Mo. 349, 16 S. W. 505; St. Louis Fair Assn. v. Carmody, 151 Mo. 566, 52 S. W. 365; State ex rel. Connecticut Fire Ins. Co. v. Cox, 306 Mo. 537, 268 S. W. 87; State ex rel. v. Daues, 315 Mo. 22, 285 S. W. 479; Haggerty v. Ice Mfg. Co., 143 Mo. 238, 44 S. W. 1114; 2 Page on Contracts (2 Ed.) sec. 1108; Wein-stein v. United States, 293 Fed. 388; Pattis v. United States, 17 Fed. (2d) 562; Anstess v. United States, 22 Fed. (2d) 594; Massei v. United States, 295 Fed. 683; Reynolds v. United States, 282 Fed. 256. We have examined those citations and many other cases and find nothing therein in conflict with this construction of the statute.

In this connection defendants contend that mere knowledge of the intended use by defendants of the hops, was evidence tending to show that plaintiffs were guilty of a conspiracy to violate the national prohibition act. We do not think so. "The mere knowledge, ac-

quiescence, or approval of the act, without cooperation or agreement to cooperate, is not enough to constitute one a party to a conspiracy." [12 C. J. 544; Lucadamo v. United States, 280 Fed. 653, l. c. 657; Marrash v. United States, 168 Fed. 225.] Defendants cite as sustaining this contention Jones v. United States, 11 Fed. (2d) 98; Pattis v. United States, 17 Fed. (2d) 562; Costal v. United States, 13 Fed. (2d) 843. In those cases the convictions were not sustained on mere knowledge. There was evidence tending to show cooperation.

IV. Defendants next challenge an instruction on the credibility of witnesses. Plaintiffs contend that no exception was saved by defendants at the time the court gave this instruction. On examination of the bill of exceptions we find recorded therein such an exception. However plaintiffs state that before the judge signed the bill he gave the parties a hearing on the question. They contend that at the hearing the evidence showed that defendants did not at said time note an exception; and that the judge was in error in signing the bill. A record of this evidence and the finding of the judge on the question was signed by the judge and attached to the bill of exceptions. Plaintiffs seek to have this court review the evidence and determine the question. We are without authority to do so. By statute the authority to settle a bill of exceptions is lodged with the trial judge or by-standers. [Secs. 1008, 1009, 1010, 1011, R. S. 1929.] The evidence at that hearing is no part of the proceedings of the trial and is not a part of the bill of exceptions. [Tyon v. Wabash Ry. Co., 207 Mo. App. 322, l. c. 331, 232 S. W. 786.]

Plaintiffs also contend that defendants did not challenge this instruction in the motion for a new trial. We find in the motion specifications as follows:

"Because the court erred in giving the Instructions 1, 2, 3, 4, 5 and 6 and *all other instructions at the request of plaintiff,* because said instructions were illegal and improper and were given over the objections of the defendants then made and overruled and excepted to.

"Because the court erred in giving instructions of its own motion over the objections and exceptions of the defendants."

Under the rulings of this court these specifications are sufficient to challenge the action of the trial court in giving the instruction.

We now consider the instruction. Defendants contend that the evidence did not justify an instruction on the credibility of witnesses. We think the trial court did not abuse its discretion. The conflict in the evidence authorized the instruction. [Howser v. C. G. W. Ry. Co., 5 S. W. (2d) 59, l. c. 65; Dawson v. Flintom, 190 S. W. 972, l. c. 974.]

Defendants next contend that the instruction was erroneous for the reason it did not require the jury to find that a witness has "willfully" or "intentionally" sworn falsely as to a material matter before the jury could reject the whole or any part of such witness's testimony. Under the instruction if the jury believed a witness has sworn falsely as to a material matter, the testimony of such witness could be rejected. "In failing to require the element of *willful* or *intentional* false swearing, the long settled law in this State was violated." [State v. Elkins, 63 Mo. 159; Jackson v. Powell, 110 Mo. App. 249, 84 S. W. 1132; Poague v. Mallory, 208 Mo. App. 395, 235 S. W. 491.]

For the error in this instruction, the judgment should be reversed and the cause remanded. It is so ordered. All concur.