**UNITED STATES v. ISRAEL et al.**

No. 877.

District Court, M. D. Pennsylvania.

July 11, 1932.

Andrew B. Dunsmore, of Wellsboro, Pa., for the United States.

Vosburg & Vosburg, of Scranton, Pa., for defendants.

JOHNSON, District Judge.

This is a petition to quash the search warrant, suppress the evidence, and return the property seized by the prohibition agents.

The property in question consists of a large quantity of copper boilers, boiler tops, fittings, and coils. The defendants contend that the search warrant was illegal and void because it was not predicated on any violation of the National Prohibition Act and that the property seized should be returned because the articles are not contraband in their nature and were not intended for use in connection with the manufacture or sale of intoxicating liquor in violation of the National Prohibition Act.

The facts set forth in the affidavit made by the prohibition agent upon which the search warrant was issued are as follows:

"(a) That on or about the 9th day of February, 1932, at about 12 Noon, affiant, accompanied by a young man acting in the capacity of Clerk in the premises of B. Seigel, (73 E. Northampton St., Wilkes Barre, Luzerne Co., Pa.), entered the above described premises, known as the Merchants Equipment and Supply Co., in the second floor thereof, and was introduced to a man, name unknown, being about 5′6″ tall, weighing about 160 pounds, having brown eyes and dark hair, wearing glasses, who was acting as foreman in the said establishment; that the

above-mentioned Clerk stated that affiant was a man from Seigels' and that he wanted the still; that the said foreman told affiant that he did not understand affiant's plan for the still, and that during his eight years of experience of making stills he never had a still like the plan that affiant had submitted; that if the still was made according to affiant's plans that it would probably not work as satisfactorily as it would if affiant would agree to him making it according to his plans; that while discussing the plans in operation of the still of this plan which affiant had submitted, the said foreman stated that he would like to suggest to affiant the type of condenser that affiant should use to avoid trouble and in order to have good results in the manufacture of liquor, and the said foreman then suggested that affiant come with him to the other part of the floor in the building where he showed affiant a large number of condensers and stills and at that time told affiant that the said condensers would make a better grade of alcohol than the condenser that affiant had suggested on his plan, and that the said foreman suggested to affiant that he should show affiant the type of stills that he had on hand at that time; that the stills that he had there, in connection with the condensers, would make a good grade of whiskey; affiant then told the said foreman, after looking at the stills and condensers, that he would follow his recommendation and suggestion and would purchase one of his stills instead of having him make one according to affiant's plans, and then affiant asked him what size he would suggest to go with the cooler; he suggested that affiant buy a twenty-gallon capacity boiler which he stated that he sold quite a number of each day to people, and that this still would produce fifteen gallons of good alcohol per day without rushing; that affiant then asked the said foreman how much the complete still and condenser would cost; the said foreman told affiant that it would cost affiant forty-seven ($47.00) Dollars; affiant then asked the said foreman if the forty-seven ($47.00) Dollars included all charges to him and Seigel, and he said 'Yes,' that that price included Seigel's commission; that the said foreman then went out to his pile of stills and brought one out and put it on the work bench and explained to affiant how it operated, and stated that he would also put a blow-off valve on the still and a clean-out plug; that the said foreman showed affiant a large cooling tank which he said that he was building for a one-thousand gallon two-column alcohol distillery, and told affiant that as soon as he finished that job that he would immediately start to work on affiant's still; that on February 10, 1932, at about 10:15 A. M., affiant accompanied by the same Clerk, above-mentioned, again entered the above-described premises and was met by the same foreman above-described; that affiant told him that he wanted to find out about a separator and he showed him the plan that he had for a separator and he told affiant that his plan was no good and that he had a separator that *would work much more satisfactorily and give better results*, in connection with the twenty-gallon still that he was making for him."

Section 18, tit. 2, National Prohibition Act (27 USCA § 30), provides that: "It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction, or receipt advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

The statute makes the intention of the maker, seller, or possessor the controlling factor in determining whether the property is illegally made, sold, or possessed. No presumption is created by the statute from the mere possession, and the intent must be established by independent facts. Nosowitz v. United States (C. C. A.) 282 F. 575. According to the affidavit of the prohibition agent, the conversation and actions of the defendants show an *intention of defendants to* manufacture and possess these articles in violation of the National Prohibition Act.

And now, July 11, 1932, the petitions to quash the search warrant and return the property seized are hereby dismissed, and the rules granted thereon are discharged.