FLOYD E. JACOBS, Administrator of the Estate of A. HATTREM, T. A. LIVESLEY and JOHN J. ROBERTS, Copartners Doing Business as A. HATTREM & COMPANY, Appellants, v. A. DANCIGER, JACK DANCIGER, DAN DANCIGER, M. O. DANCIGER and JOE DANCIGER, Copartners Doing Business as DANCIGER BROTHERS.—95 S. W. (2d) 1193.

Division Two, June 30, 1936.

*Charles H. Thompson* and *Johnson, Garnett & Quinn* for appellants.

*Ringolsky, Boatright & Jacobs* for respondents.

BOHLING, C.—Under date of April 23, 1920, A. Hattrem, representing plaintiffs, of Salem, Oregon, and A. Danciger, representing defendants, of Kansas City, Missouri, contracted in writing for the sale and purchase, respectively, of 150 bales of choice Yakima or Oregon brewing hops of the crop of 1920, at 85 cents a pound, delivered f. o. b. cars at Kansas City, Missouri, in shipments of fifty bales each in October, November and December, 1920. On September 24, 1920, prior to any shipment under said contract, defendants notified plaintiffs they would not receive said hops and would not comply with said contract.

The term "bale," as used in said contract, referred to 200 pounds of hops. There was testimony tending to establish the fact that the market price of hops at Kansas City, Missouri, had dropped to approximately 47 cents on September 24, 1920; and plaintiffs instituted this action to recover the difference between the contract price and the market price at the time of cancellation, alleged to be $12,000.

Defendants had been engaged in the wholesale liquor business and the operation of a brewery. With the advent of War Time Prohibition and the Eighteenth Amendment to the Federal Constitution, they discontinued said business; and, thereafter, in 1919 engaged in what is termed in the record the "home brew package business," which consisted of the manufacture and sale of packages containing hops, malt extract, clarifier, caps, cappers, rubber siphon and drugs for making home brew beer. The packages did not include yeast, without the addition of which the packages could be used for making beer containing not in excess of one-half of one per centum of

alcohol by volume. The directions, however, contained instructions covering the addition of yeast. Defendants had been advised by the Prohibition Commissioner on March 27, 1920, that the sale of their products and formula was not in violation of law. On June 24, 1920, they were advised the ruling theretofore made was reversed, and that the conclusion had been reached that such business was in violation of the National Prohibition Act.

Plaintiffs' petition was upon the written contract between plaintiffs and defendants. Defendants' answer, admitting the contract and its cancellation, alleged that said contract and the acts, conduct and agreement of plaintiffs and defendants were illegal and in violation of Section 18, Title II of the National Prohibition Act (41 Stat. 313, 27 U. S. C. A., sec. 30), and Sections 37 (35 Stat. 1096, 18 U. S. C. A., sec. 88) and 332 (35 Stat. 1152, 18 U. S. C. A., sec. 550) of the Federal Criminal Code. The reply was a general denial.

The case is here upon second appeal (see Jacobs v. Danciger, 328 Mo. 458, 41 S. W. (2d) 389), and passes off on issues involving said Section 18.

I. One of the contentions of plaintiffs is to the effect Section 18, Title II, of the National Prohibition Act did not attempt to make it unlawful for one to sell a raw product to another who is engaged in the business of making second sales of that product to third parties, who in turn, use it in violation of said act; and the contract in suit was not violative of said section. Said Section 18, reads: "It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direction or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor." The provisions of said statute differ materially from the provisions of the statutes under consideration in the cases cited by appellant in support of their contention. In Howell v. Stewart, 54 Mo. 400, 406, the statute under consideration did not prohibit the *loan* which the plaintiff sought to collect; and the *sale* and *purchase* of the warehouse receipts covering distilled spirits involved in Higgins v. Fitzgerald, 266 Mass. 176, 178, 164 N. E. 812, were expressly permitted by the National Prohibition Act [Title II, Sec. 3, 41 Stat. 308, 27 U. S. C. A., sec. 12]. On the other hand, not only are the provisions of said Section 18 to be liberally construed [Title II, Sec. 3, 41 Stat. 308, 27 U. S. C. A., sec. 12; Danovitz v. United States, 281 U. S. 389, 397, 74 L. Ed. 923, 926(2), 50 Sup. Ct. 344, 345], but said statute expressly made unlawful the *sale* of " 'any . . . substance [hops] . . . intended [by the seller] for use in the unlawful manufacture of intoxicating liquor.' " [Jacobs v. Danciger, 328 Mo. 458, 468, 41 S. W. (2d) 389, 391(5). See, also, Three Star

Food Products Corp. v. Ofsa, 94 W. Va. 636, 643, 119 S. E. 859, 862(2).] Under this statute it was not necessary, as it was necessary under the statutes in the cases relied on by plaintiffs, that the seller become a *particeps criminis* to the unlawful act of the buyer that the sale be unlawful.

■ II. Plaintiffs question the correctness of defendants' instruction No. 9, reading:

"The court instructs the jury that under the law and evidence the business Danciger Brothers were engaged in on or about April 23, 1920, of preparing, selling and possessing for sale the home brew packages mentioned in evidence, advertised, designed and intended by them to be used for the making of beer containing in excess of one-half of one per cent of alcohol by volume, was in violation of the laws of the United States.

"If, therefore, you find and believe from the evidence that A. Hattrem, acting for plaintiffs at the time of making the contract sued on, knew the said business of Danciger Brothers and advised, encouraged, counselled or induced them to buy the hops in question with the design and intention that they should be used by Danciger Brothers in said business and agreed to sell and deliver to Danciger Brothers said hops to be used in said business, then said contract was illegal and in violation of the laws of the United States and your verdict must be for the defendants."

a. Plaintiffs contend the alleged illegality of defendants' business was an affirmative defense, an issue of fact to have been submitted to the jury, and the first paragraph of said instruction, peremptorily advising the jury that the business was illegal, was error.

Defendants assert the first paragraph of said instruction, although peremptorily advising the jury the business defendants were engaged in was unlawful, was in accord with the trial court theory of both parties, in that, plaintiffs by their (1) cross-examination and (2) requested instructions indicated to the court no dispute existed as to the *intent* and *purpose* of defendants in advertising, manufacturing and selling the "home brew packages;" and, hence, plaintiffs may not now complain. To sustain the contention that, although an issue of fact be tendered by the pleadings, it is not reversible error for the trial court to assume the existence or nonexistence of such fact where both litigants manifest to the court its existence or nonexistence, as the case may be, is not a real controverted issue, defendants cite Davidson v. St. Louis Transit Co., 211 Mo. 320, 355(II), 357, 359, 109 S. W. 583, 592(2); and Walsh v. Hartman (Mo. App.), 39 S. W. (2d) 398, 400(1, 2). In the Davidson case, an action by a passenger of defendant street railway for damages on account of personal injuries sustained as a result of a collision between two

of defendant's street cars, the facts assumed to exist during the course of the trial and in one of plaintiff's instructions, although put in issue by the pleadings, were that defendant was a common carrier of passengers and that a collision occurred. It is at once apparent the facts there assumed were as readily available to defendant as to plaintiff; and, the testimony as to such facts standing uncontradicted and counsel having manifested to the court by the manner of the examination of witnesses and otherwise that no real dispute existed with reference thereto, this court held it was not reversible error to assume the existence of such facts in the instructions to the jury. The Walsh case, supra, is of like effect.

(1) To sustain a conviction under Section 18, supra, the accused must have a specific intent to do the act prohibited by the statute, which intent must be established as an independent fact. [Israel v. United States (C. C. A.), 63 Fed. (2d) 345(1), and cases there cited, affg. 60 Fed. (2d) 327; United States v. 301 Cans Acme Malt Extract, 28 Fed. (2d) 213, 214(1).] Defendants stress the testimony of defendant A. Danciger, the agent and representative of defendants, that the "real intent and purpose" in marketing the home brew packages was for the purchaser "to make beer in excess of one-half of one per cent; to make beer all the way up to seven or eight per cent." The testimony, however, was admitted over objection, with exceptions saved, as to its materiality, based on the impossibility of ascertaining what intent might have existed in the recesses of the witness' mind. The National Prohibition Act, prohibiting the manufacture, etc., of intoxicating liquor for beverage purposes containing one-half of one per centum or more of alcohol by volume, insofar as here involved, went into effect in January, 1920. Defendants also stress certain questions asked this witness on cross-examination which, as we read the record, might have implied that the business defendants were engaged in was considered illegal in 1919, and might have had for their object the discrediting of the witness with the jury rather than a manifestation to the trial court that plaintiffs were admitting the truth of certain allegations in defendants' answer and controverted by plaintiffs' reply. The cross-examination of a witness is an effective (at times, the only) weapon available to counsel in attacking the truth of the witness' testimony, and should not be restricted so as to hamper counsel in leading the witness by questions assuming the truth of the testimony (especially testimony resting peculiarly within the knowledge of the witness) that in the end counsel may question the veracity of the material fact testified to; unless it is clearly apparent counsel is abandoning his written pleadings placing the fact in issue. In any event the intent of a person or persons, other than as disclosed by their acts and conduct, rests peculiarly within the knowledge of such per-

son or persons; and what is said in the Davidson case (211 Mo. 1. c. 359, 109 S. W. 583) is apropos: "On the other hand, it may be that in the trial of a cause a witness or witnesses may testify as to some material fact and the opposite party is unable to introduce any witness to contradict their testimony, yet there is no question but what he has a right to challenge the credibility of such witnesses and have the court or the jury to whom the cause may be submitted, determine such fact." Without discussing other details of the evidence, affording, we think, defendants with no more favorable basis to sustain their contention, we hold, under the facts of the instant case, there was no such manifestation of acquiescence in the truth of the fact issue under discussion in the cross-examination of defendant Danciger by plaintiffs as to withdraw from the jury its function of passing on the credibility of said witness and the weight and value of the testimony bearing on the illegality of defendants' business, involving, as it did, the necessary criminal intent on the part of defendants [Gould v. Chicago, etc., Railroad Co., 315 Mo. 713, 723, 290 S. W. 135, 138(2)], even though such testimony stood uncontradicted and unimpeached [State ex rel. v. Trimble, 307 Mo. 536, 551, 271 S. W. 43, 47(9); Young v. Wheelock, 333 Mo. 992, 1000, 64 S. W. (2d) 950, 953(3)].

(2) Defendants contend plaintiffs' instructions assumed the same fact defendants' instruction peremptorily told the jury existed. Plaintiffs' Instruction No. 1 directed a verdict for plaintiffs "unless you [the jury] further find and believe from the evidence that at the time of entering into said contract Hattrem [plaintiffs' representative], the witness, *knew that the defendants intended to use said hops in the manufacture and sale of packages designed for the making of beer* and agreed to sell said hops in furtherance of *such purpose,* as defined in other instructions."

Plaintiffs' Instruction No. 2 read: "The jury are instructed that mere knowledge alone without assent thereto or participation therein on the part of the sellers at the time of entering into a contract for the sale of a commodity *that their purchasers intended to use such commodity as an ingredient in a mixture, the sale of which would be a violation of the law,* would not in itself invalidate such contract; there must be some act *or* agreement *or* consent of the sellers *in furtherance of such unlawful purpose.* If you find and believe from the evidence that at the time of entering into the contract of sale, sellers did not know that the *defendants intended to use said hops in the manufacture and sale of home brew packages in violation of law* and did nothing or agreed to do nothing which would be in furtherance of *such purpose,* nor consent to *such violation,* you will disregard the defense that the contract in evidence was a contract in violation of the law."

In McMillan v. Bausch (Mo.), 234 S. W. 835, 836(3), the instruction under discussion was to the effect that "if the jury found defendant knew . . . that the roof of the tunnel under which plaintiff was working was unsafe from loose, overhanging earth or rock," etc. Answering appellant's contention that the instruction assumed the roof was unsafe, this court said: "The jury could not find that the defendant knew the roof was unsafe without finding that it was in fact unsafe." [See, also: Van Loon v. St. Louis Mer. Br. Term. Ry. Co., 319 Mo. 948, 955, 6 S. W. (2d) 587, 589(1); Geary v. Kansas City, O. & So. Ry. Co., 138 Mo. 251, 259(2), 39 S. W. 774, 775; Dammann v. St. Louis, 152 Mo. 186, 198 (2), 53 S. W. 932, 935(2); Hill v. St. Louis Pub. Serv. Co. (Mo.), 64 S. W. (2d) 633, 637(9):] These cases proceed on the theory that a jury, composed of reasonable men, would not find the ultimate fact of knowledge of the existence of a fact on the part of a litigant without finding the existence of the fact upon which such knowledge is necessarily predicated—that is, the premise or condition precedent to the existence of the litigant's knowledge. Plaintiffs' instruction might have been more aptly phrased had it been conditioned, in effect, on a specific finding of the illegality of the business defendants were engaged in, and knowledge thereof on the part of the witness Hattrem, etc.; or had it proceeded on the expressed theory that even though the business defendants were engaged in was illegal, plaintiffs nevertheless were entitled to recover under certain contingencies. Differences in the wording of plaintiffs' instruction, as well as the wording of the first paragraph of defendants' instruction, convey differences in meaning. And should it be said that plaintiffs' instruction had a tendency to relieve the jury of inquiry as to defendants' intended use of said hops if they found Hattrem had no knowledge of said intended use, still a jury, composed of reasonable men, would not have found that Hattrem knew defendants intended to use said hops in the manufacture and sale of packages designed for the making of unlawful beer had they been unable to find defendants in fact intended to so use said hops. Plaintiffs' instruction does not forestall all inquiry on the part of the jury as to the legality of defendants' business as does the first paragraph of defendants' instruction by peremptorily telling the jury the business defendants were engaged in was in violation of the laws of the United States, and to that extent the instructions are not in common. Examining the record, several of defendants' requested (but refused) instructions required the jury to find, among other things, that the business defendants were engaged in was within the prohibitions of said Section 18. Thus, defendants must have considered said issue of fact, peremptorily withdrawn from the jury by their given Instruction No. 9, a live issue in the case, and by such action defendants themselves, to that extent,

refute the contention now made that no dispute existed as to the illegality of the business they were engaged in.

The foregoing observations apply to plaintiffs' Instruction No. 2. Plaintiffs' position is well taken.

■ b. Plaintiffs make several attacks on the second paragraph of said Instruction No. 9. In the discussion of said Section 18 on the former appeal, we held the design or intent mentioned in said section to be the design or intent of the seller and not of the buyer [Jacobs v. Danciger, 328 Mo. 458, 468, 41 S. W. (2d) 389, 391(5), and cases cited; see, also, Israel v. United States (C. C. A.), 63 Fed. (2d) 345(1), affirming 60 Fed. (2d) 327, 328(1)]; and in discussing the contention that *knowledge alone* on the part of the seller of the buyer's intended illegal use of the commodity purchased was sufficient evidence for the jury to find the necessary illegal intent on on the part of the seller, we said: "It [Congress] . . . fixed the intention of the seller in making the sale as the test of legality. For this reason we think the word 'intended' was not used in the sense of mere knowledge. It means more than mere knowledge. It means knowledge of the seller, accompanied by some act on his part indicating consent to, or encouragement in, such use." The ruling there announced is restricted, as is the discussion in connection therewith, to the effect of *mere* knowledge on the part of the seller of the buyer's intended unlawful use of the subject-matter of the transaction. If, with a legal intent, a seller disposes of a commodity—and his intent is the test under said statute—mere knowledge of an illegal intent on the part of the buyer does not change the original lawful intent of the seller. However, should the seller, notwithstanding his original lawful intent, consent to or encourage the buyer in the furtherance of the buyer's illegal intent, evidence of probative value exists of the seller's unlawful intent. As stated on the first appeal the evidence was sufficient, if believed by the jury, to show plaintiffs not only knew but also consented to and encouraged defendants in purchasing the hops for an unlawful use.

(1) Plaintiffs state the words "advised, encouraged, counselled or induced" do not suggest the necessary participation on the part of plaintiffs in any illegal purpose of defendants. As stated, on the former appeal we considered knowledge of coupled with some act of the seller indicating consent to or encouragement in the prohibited use of the commodity by the buyer sufficient to bring the transaction within the term "intended" as used in said Section 18. The statute *prohibits the sale* of a commodity *intended by the seller* for use in the unlawful manufacture of intoxicating liquor; and if plaintiffs knew defendants were engaged in such unlawful business and, in addition, advised, encouraged, counselled or induced defendants to buy the hops *with the* design and *intention on the part of plaintiffs*

said hops be used for such unlawful purpose, the sale falls within the expressed prohibitions of said statute.

(2) Complaint is also made of the phrase "with the design and intention that they should be used by Danciger Brothers in said business" in that the jury are directed only to the intention of the seller. That the intent of the buyer is admissible as an evidentiary fact in arriving at the intent of the seller does not change the test set up by the statute (the intention of the seller) or cause the statute to be of the same effect as statutes wherein the seller must act as a *particeps criminis* with the buyer to vitiate the contract of sale. The word "designed" in the instruction placed, we think, an unnecessary burden on defendants, and was not prejudicial to plaintiffs.

(3) Plaintiffs also contend the clause "and agreed to sell and deliver to Danciger Brothers said hops to be used in said business" to be erroneous in that there was no evidence of any agreement that defendants *must* use the hops in making up home brew packages. The underlying thought under the wording of the statute, so far as the instant case is concerned, is a sale, with the intent on the part of the seller, not the existence of an agreement with the buyer, that the commodity sold be used in the unlawful manufacture of intoxicating liquor. The instruction should be modified accordingly upon retrial.

With said Section 18 expressly making the sale, with the intent there mentioned on the part of the seller—irrespective of the acts and intent of the buyer—unlawful, the seller does not have to become a *particeps criminis* to the unlawful acts of the buyer to vitiate the contract of sale, as is the case under the statutory provisions involved in practically all of the cases relied on by plaintiffs in support of their contentions, in some of which the distinction is recognized. The case of Gallick v. Castiglione, 2 Cal. App. (2d) 716, 718(3), 38 Pac. (2d) 858, 859(4), considered the issue one for the triers of the fact.

The judgment is reversed and the cause remanded. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.