CURTISS CANDY COMPANY, RESPONDENT, v. NATIONAL FINANCE COR-
PORATION, APPELLANT.—71 S. W. (2d) 833.

Kansas City Court of Appeals. May 21, 1934.

610

W. S. McClintock and A. L. Quant for respondent.

Marley & Marley for appellant.

REYNOLDS, C.—From an adverse judgment of $990 in favor of respondent in the Circuit Court of Jackson County, appellant, after an unsuccessful motion for a new trial, prosecutes this appeal. The trial was before the court and a jury.

The appellant is a corporation located at Kansas City, Missouri, and engaged in the business of handling delinquent accounts, notes, and judgments for creditors against debtors for a consideration. The respondent is a corporation with its chief place of business at Chicago, Illinois, engaged in business as a manufacturer of candy and gum and in the sale of same to candy jobbers.

In the latter part of 1928 and shortly prior to November 1, the appellant and respondent entered into a contract in writing, by which appellant, in consideration of the sum of $300 paid it by respondent, engaged that respondent should be entitled for one year to the adjustment service and benefits thereof afforded by appellant in the collection of accounts legally due respondent to be placed with appellant for collection and settlement, to be not less than one hundred nor more than six hundred in number, and to be for not less than ten dollars each, and in the aggregate to amount to at least ten thousand dollars. It was recited in said contract that the appellant should use lawful and just means to secure the settlement of such accounts as might be thus placed with it by respondent, with the known addresses of the respective debtors stated, and should pay all expenses incidental to such service that might be required, including attorneys' fees.

It was further recited in said contract that no charge should be made for the location of fifty missing debtors; that one dollar should be charged for each location thereafter; that a compromise of any

claim should be made only upon written authority of respondent; that a loan department was maintained to assist respondent's debtors in the payment of their obligations; and that money would be lent therefor at legal rates upon the acceptance by appellant of any debtor's application without recourse on respondent. Based upon the loan service, certain discount and collection rates were provided to be available to appellant as additional compensation.

It was further provided by the terms of said contract that appellant, upon the termination thereof, should pay to respondent the sum of twelve hundred dollars in cash, less the amount of settlements effected upon accounts placed with it upon which the service provided by the contract should be applied; that respondent should, at all times, receive the proceeds of the money paid appellant regardless of the total amount received; that, where debtors settled direct with respondent, appellant should have prompt payment of its commissions thereon; and that at least twenty-five per cent of the accounts to be serviced should be placed with appellant within thirty days and the remainder within six months. The time within which the first per centage of the accounts was required to be placed, noted in the contract, was later, by mutual consent, extended to April 1, 1929. Such contract also contained a clause, under the caption "Bankruptcy Department," that, where fraud was suspected, the client had the privilege of listing a claim for investigation. Such contract was upon a printed form furnished by appellant, and it was stated therein that all obligations of appellant were stated therein and no representative had any authority to make any agreement or to alter said contract. It was presented to respondent at its place of business in Chicago by one C. Neal Dustin, a representative of appellant, and bears respondent's acknowledgment in writing that it had accepted such original printed agreement, without alterations, attached thereto. It was contended by respondent upon the trial and so declared in its petition that it was accepted by it upon the alleged statement of such representative made to it that, in submitting the addresses of the various debtors, it would be all right to submit the addresses shown in respondent's correspondence with the debtors.

The petition alleges the corporate existence of both respondent and appellant and the respective places of business of each; the contract and the execution thereof upon a consideration paid appellant by respondent; the furnishing by respondent, within the time limited, of accounts and claims legally due it, aggregating a total sum in excess of ten thousand dollars, together with the last known addresses of the various debtors to be serviced by appellant under said contract. It alleges further that appellant, in presenting its form of contract, stated to respondent that the words "known address" as used therein meant the "last known address" of such debtor; that respondent,

relying upon the construction thereof as made by appellant, accepted said contract and paid appellant the full consideration of three hundred dollars therefor about November 1, 1928; that respondent had accordingly furnished such "last known addresses;" that appellant accepted the accounts so placed with it by respondent as and for a full compliance by respondent with such contract and undertook the adjustment service thereof and continued such service for a period in excess of one year from the date of the delivery thereof to it; that respondent fully performed all the terms of said contract by it required to be performed; that respondent received, as the proceeds of accounts and claims adjusted and collected by appellant within the period of service of one year and over rendered by it and as a result of such service, the total sum of $216.50; that, by reason of the promises, appellant became indebted and is indebted to respondent for the difference between the sum of twelve hundred dollars agreed to be paid respondent by appellant and said sum of $216.50 in the sum of $983.50; that respondent had made demand for the payment of said sum but that the same remained wholly unpaid. The petition made prayer for judgment for said sum of $983.50 with interest.

The answer admitted the existence of appellant as an organization and tendered a general denial to all other allegations of the petition.

There was evidence tending to show that respondent placed with appellant April 1, 1929, one hundred accounts in number, aggregating the total amount of $14021.62, none of which were for less than ten dollars, and furnished respondent with certain addresses purporting to be the "known addresses" of the various debtors. About August 15, 1929, appellant, by letter to respondent, stated that it had been and was actively engaged in following up the collection of the claims placed with it and that it found that thirty-four of such debtors were not at the addresses given and asked for a correction as to such addresses or for additional claims to replace the same. Thirty-four additional claims aggregating four thousand six hundred dollars were thereupon sent it by respondent with the street addresses of the debtors where known, none of which were for a less sum than ten dollars. Later, on October 15, 1929, appellant notified respondent by letter that, in twenty-two of the thirty-four accounts last placed with it, the debtors could not be found at the addresses given. The names of such debtors were also given. The aggregate amount of the twenty-two claims was thirty-four hundred and three dollars.

In reply to such notice, respondent on October 22, 1929, wrote appellant that it was unable to furnish further accounts to supplement those mentioned; that the addresses furnished were those known by it to be the addresses of the various debtors at the time of its dealings with them and asked that, if such view be incorrect, appellant should so advise it immediately. To this letter, appellant responded on the

thirtieth day of October, 1929, that, while it might be true that the debtors in question were located at the addresses given at the time respondent dealt with them, nevertheless it had been determined, through appellant's attorneys in the various locations given and through the return of mail from the Post Office Department, that such debtors were not at the addresses shown when the accounts were referred to it for service. Further brief correspondence is shown in the record, in which respondent, on November 20, 1929, by letter, in effect advised appellant that it was unable to furnish any additional information as to the addresses of debtors, claims against whom had been submitted, and, by another letter of the same date, submitted certain corrections to be made in amounts due from certain debtors on such accounts as originally given when claims were first submitted.

It would appear also that appellant, on November 21, 1929, by letter, called attention to its letter of October 15, 1929, requesting information concerning the last thirty-four claims placed with it and asking for an early reply—apparently prior to having received respondent's letter of the day previous. It does not appear that any further information was given by respondent relating to the addresses of such debtors or further reply made to such letter of November 21, 1929.

May 14, 1920, being more than one year after the delivery by it to appellant of its accounts for service, the respondent made demand of appellant by letter for the payment to it of the sum of $1200 specified in the contract less the amount of the proceeds of claims received by it from accounts adjusted by appellant. Appellant thereupon, by letter of June 10, 1930, asserted a breach of said contract by respondent in the following particulars:

1—That respondent failed to furnish it with any accounts to be serviced until April 1, 1930, when the contract required that at least twenty-five per cent of such accounts be placed with it within thirty days after the execution of the contract or within thirty days after November 1, 1929.

2—That the addresses of quite a number of the debtors were not as supplied by respondent.

3—That some of the debtors were bankrupt or deceased and therefore unacceptable under the terms of the contract and that only seventy-eight of the accounts furnished were serviceable and that, by reason of respondent's failure to fulfill the contract so far as it related to the proper handling of the service, there was nothing due it upon the item of twelve hundred dollars.

It further appears that, at such time, appellant retained all the accounts and claims which respondent had placed with it other than those which had been settled and accounted for and still retained the same to the institution of this suit and had the same at the time of the trial. It further appears from the evidence that the service per-

formed by appellant with reference to the various claims placed with it consisted of four circular form letters written ten or fifteen days apart, the last of which, on the first one hundred accounts placed with it, was sent out July 2, 1929, and, on the thirty-four accounts later placed, was sent out November 22, 1929. Many of these letters were returned with the notation of the postmaster thereon to the effect that the addressee was not known or could not be found or the like. In some instances, claims were forwarded to attorneys for appellant at the location of the respective debtors, usually with no results. In some instances, when found, the debtors were reported in bankruptcy or as having denied the claims; and such matters were dropped. In instances where the letters were returned or the addresses given were found not to be the addresses of the debtors at the time, it does not appear that the tracing service was applied, at least in any effective manner. This suit was the result.

The accounts placed with the appellant by respondent were such as were shown by respondent's records of accounts receivable; and statements thereof, comprising the names of the respective debtors, total amounts or balances thereof, and the addresses of the debtors copied therefrom by respondent, were forwarded to appellant and listed by appellant upon a form furnished by it, for which it receipted with a statement that it had begun service upon the accounts so listed.

The respondent's record of accounts receivable appears to have shown the addresses of the various debtors as respondent knew them or learned them in the course of its business with them or at which respondent did business with them. A list of debtors classed as "skips" was also made up and furnished, but no report of service on any of said accounts where the debtors were so listed appears in the record upon the trial.

There was also evidence introduced over appellant's objection tending to show that, at or prior to the acceptance of the contract in question, appellant's representative C. Neal Dustin stated to respondent that, in submitting addresses of debtors, it would be all right for respondent to give such addresses as were shown by respondent's correspondence with such debtors and also that such representative stated that appellant had a department for locating missing debtors, described by respondent's witness as "skips" or "debtors not at the addresses shown by the correspondence."

The record fails, however, to show evidence of any authority upon the part of said representative for the making of such statements or of sufficient matters to constitute a ratification by appellant of the same or of said representative's acts and conduct in so making the same.

There are other facts appearing from the record which it is not here necessary to note.

### OPINION.

1—The appellant complains, first, of the action of the trial court in refusing its request for an instruction directing a verdict in its favor by the jury. Under this head, appellant complains, in substance, that respondent is bound by the contract as written or printed; that appellant's representative C. Neal Dustin was not authorized to place any construction upon the words "known addresses" and thereby alter in any manner the terms of the original contract; and that there was no legal, competent evidence showing any modification or alteration of the original contract or showing the existence of the modified contract sued upon.

These matters may be taken up and considered together.

2—The respondent in its petition, instead of standing upon the original contract as printed, elected to base its cause of action upon a claimed, specifically-agreed construction of said contract—in other words, upon a modified contract essentially different from the original as printed—and seeks to recover upon such modified contract and its alleged compliance with the requirements thereof. It was therefore required to recover upon such modified contract as pleaded or not at all. [Cole v. Armour, 154 Mo. 333, 55 S. W. 476; Davis v. Drew, 152 Mo. App. 503, 11 S. W. 869.].

The original contract between appellant and respondent, as printed, provides that respondent should furnish to appellant for service by appellant at least one hundred accounts legally due respondent, amounting in the aggregate to at least the sum of ten thousand dollars, none of which should be less in amount than ten dollars, together with the known addresses of the various debtors named therein. Such contract is, in printed form, furnished by appellant; and, as a basis for its judgment sought, it is alleged by respondent in its petition that, at the time such contract was submitted to it for acceptance, appellant's representative C. Neal Dustin stated to it that by the words "known addresses," as used in said contract relating to the location of the debtors, was meant the "last known addresses" of such debtors and that, in reliance upon the construction thus given such words by appellant, it accepted such contract as presented and paid to appellant the full consideration therefor and that it had complied with the terms of such contract and had delivered to appellant the required number of accounts of the character and in the amounts required and had furnished it with the "last known addresses" of the debtors.

The cause of action stated by respondent in its petition is upon the original contract as thus modified, requiring it to furnish the "last known addresses" of its debtors instead of the "known addresses." In other words, it is upon an alleged contract made by it with appellant's representative C. Neal Dustin. As a prerequisite of any recovery against appellant thereon, the authority of C. Neal

Dustin, its representative, to make such contract for it by way of modification of the original or otherwise, must appear (Friedman & Sons v. Kelly, 126 Mo. App. 279, 102 S. W. 1066; Hodkinson v. McNeal Machinery Co., 161 Mo. App. 87, 142 S. W. 457; Johnson v. Hurley, 115 Mo. 513, 22 S. W. 492; Knoche v. Whiteman, 86 Mo. App. 568); or it must appear that, with full knowledge thereof, appellant ratified his act in such regard and knowingly assented to such modification. That he had such authority is negatived by the original contract itself which provides that all obligations of the corporation are stated therein and that no representative has authority to make any agreement or to alter it. Respondent was thus placed upon its guard. It could not further proceed upon any theory of the representative's apparent authority to make or modify such contract. It should have taken the matter up directly with appellant if it desired an agreement that such construction should obtain and have secured appellant's consent thereto. This, it does not appear to have done but, upon the contrary, by accepting the printed contract itself, agreed that Dustin, as representative, had no such authority. The record does not show any authority upon representative Dustin's part to make any agreement whatever of the character claimed nor in any wise to alter or modify the original contract as printed; nor does it show any ratification by appellant of such unauthorized act or agreement. The fact that appellant's representative C. Neal Dustin asserted such authority and made the alleged statement, upon which respondent claims to rely as the modified contract between itself and appellant, does not appear to have been brought to appellant's attention; but, upon the other hand, the only information given appellant relative to the contract entered into by respondent was that given in respondent's letter of November 1, 1928, introduced in the record as part of the original contract and identified as Exhibit 12-A, in which it is stated by respondent, "We have accepted the original printed agreement, without alterations, attached hereto." Without knowledge by appellant, there could be no ratification by it. There is nothing in the record to show waiver by appellant of the original contract as printed or its acceptance of accounts from respondent under some contract different from the printed contract in any respect than expressed on the face thereof.

The contract as printed was returned to appellant with the acknowledgment by the respondent that it had been accepted by it as printed without alterations. Therefore, acts done by appellant, if any, that might tend to indicate that it was not demanding a strict compliance with the terms of the contract by respondent in the matter of addresses furnished—that is that it was accepting "last known addresses" as the "known addresses" required—could not in any

manner have amounted to a ratification of the alleged modified contract pleaded.

3—Considering this for a moment as an action upon the original printed contract, aside from the alleged modification, the same result necessarily follows. It still does not appear that anything was done by appellant which amounted to a construction of such contract to the effect that by the words "known addresses" used therein was meant "last known addresses" or that the listing of the "last known addresses" by the respondent was a sufficient compliance with such contract so far as the requirement to furnish "known addresses" was concerned. Appellant received the accounts furnished by the respondent with the understanding that the addresses given were, at such time, the "known addresses" of various debtors—that is that the addresses given were the addresses known by the respondent at which the debtors could be found at the time—and undertook to service them upon such understanding. Respondent virtually concedes this proposition by contending upon the trial that the addresses given were presumably correct and known and that the burden was upon the appellant to show to the contrary. Appellant did not know at the time of the delivery of the accounts to it and of the addresses given, that such addresses were merely the "last known addresses" and not, in fact, the "known addresses" at the time; and, therefore, there could be no implication therefrom that appellant treated the contract as having been complied with by respondent in furnishing the "last known addresses." The record throughout sufficiently shows that appellant at all times, when the addresses of the various debtors furnished by respondent came in question between them, insisted that the correct and known addresses be furnished by respondent and was not advised by respondent until October, 1929, that the addresses of any of the debtors furnished by it were other than the "known addresses," when appellant, upon such notice, demanded of respondent that, in all such instances, the correct addresses be furnished, to which request, so far as the record shows, respondent has wholly failed to respond. That appellant thereafter retained the accounts becomes inconsequential. It had the right to expect of respondent a compliance with the contract in such particulars and to hold such accounts awaiting such compliance under the circumstances revealed in the record.

4—However, the action is not upon the original contract as such and cannot be so considered but is upon such contract as modified; and this cause must be so viewed and disposed of. The modification is materially different from the original and expresses an entirely different contract as to the addresses agreed to be furnished. That there is a material difference between the terms "known" and "last known," as applied to addresses, and that a requirement to furnish a "known" address is not complied with by furnishing the "last

618

known" address is clearly indicated by what is said by our Supreme Court in the case of Madison County Bank v. Graham, 79 Mo. 527, where, in an analogous matter, it was held that a statute requiring service of process of leaving a copy of the same at the usual place of abode of the party to be served was not complied. with by leaving such copy at the last usual place of abode. [See also Ruby v. Pierce, 74 Neb. 755.] The respondent, having declared upon the contract as modified, declared upon a special contract; and the burden is upon it to show the existence of such special, modified contraçt. This, it has not done. It has neither shown the authority of the alleged representative; nor has it shown facts from which any ratification of the alleged statements of its representative or of the modified contract might follow or upon which any ratification of such alleged statements and modified contract by appellant may rest. It, therefore, is not entitled to recover upon the modified contract as alleged.

5—Nor is it seen how respondent, after having accepted the original contract as printed without alterations in which it was stated that no representative had any authority to make any agreement or to alter such contract—to which respondent by its acceptance agreed —and after having signified such acceptance to appellant, can now, without first avoiding such contract upon the ground of fraud or mistake, assert a modification or alteration of such contract by appellant's representative or seek to base an action upon any such alteration or modification.

6—It follows, from what has been said and the grounds stated, that appellant's requested instruction directing a verdict for it should have been given and that the court erred in refusing it. It becomes unnecessary to consider other points made or matters presented in the briefs of either appellant or respondent. The judgment of the court below should be and is reversed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is reversed. All concur.