RYAN EQUIPMENT COMPANY, a Corporation, (Plaintiff) Appellant,

v.

Everett M. BREWER, (Defendant) Respondent.

No. 30693.

St. Louis Court of Appeals.

Missouri.

June 13, 1961.

Rehearing Denied July 11, 1961.

James C. Jones, III, St. Louis, for appellant.

Ray Carleno and John J. Casey, Carleno & Nick, Ferguson, for respondent.

WOLFE, Judge.

This is an action in four counts, the first of which is for an indebtedness in the amount of $1,224 for a balance owing on rental of a tractor. The defendant claimed that only $900 rental was owing and tendered this amount into court. A verdict and judgment on this count was for the plaintiff, but only in the amount tendered by the defendant.

The second count was for damage to the tractor during the rental term, and the amount sought was $981.48. To this count defendant answered that he owed only $200, and tendered such sum into court. There was a verdict and judgment for the plaintiff for the amount the defendant tendered.

The third count was on a promissory note for $800 plus interest and attorney's fees. To this action the defendant pleaded a setoff of $520.79 and paid $279.21 into court as the total balance owing. A verdict and judgment were for the plaintiff in the amount tendered.

The fourth count was for $709.52 on an open account. The defendant admitted liability for only $627.32, and paid that amount into court. A verdict and judgment was for the plaintiff in the sum of $706.63.

The defendant also counterclaimed for $78.11 interest which he asserted was improperly charged, and there was a verdict and judgment for the defendant on his counterclaim.

After timely motions for a new trial had been overruled, plaintiff appealed.

The plaintiff's petition alleged in its first count that it leased to the defendant a diesel crawler tractor with a shovel. The lease was for a period of six months from July 1, 1958, at $1,200 per month, plus $24 sales tax, payable in advance. It was alleged that the defendant failed and refused to pay the last monthly rental in-

stallment which became due on December 1, 1958 and the sales tax in the amount of $24. This count concluded with a prayer for the sum of $1,224.

Count 2 of the petition alleged that the defendant agreed to maintain the tractor in the same condition it was in when delivered to him by plaintiff, but that he failed to do so, and that the tractor was damaged in the amount of $981.48. The defendant sought judgment for that amount. Both Counts 1 and 2 were predicated on the lease of the tractor, which was in writing, and attached to the petition and made a part thereof.

Count 3 was on a note for $800. It was alleged that the note was executed on April 14, 1958, and became payable on June 1, 1958. The note was attached and made a part of the petition. The note provided for attorney's fees in the amount of 15 percent plus interest, all of which the plaintiff sought by this count.

Count 4 was on an open account for services rendered from September 3, 1958 to January 2, 1959, and the total sum sued for was $709.52.

The defendant, answering Count 1, admitted that he owed rental for three-fourths of the month of December, but claimed that he did not owe for the last quarter of that month as the tractor had broken down on the 24th day of December, and that he was by reason of this deprived of the use of it for the last quarter of the month. He asserted that the breakdown of the tractor was due to a factory defect covered by a factory warranty. He tendered into court $900, which he claimed was the total sum owing as rental.

As to Count 2, he alleged that the portion of the lease requiring him to return the tractor in the same condition in which he received it was impossible of performance. He alleged that the only damage to the tractor during the rental term, which was not attributable to usual wear and tear, could reasonably be repaired for

$200, and that amount he tendered into court.

Answering Count 3, the defendant admitted signing the note as part payment on a new tractor purchased from the plaintiff, but he averred that the additional sum owing for the tractor plus an account which he owed the plaintiff at the time were to be paid by a note endorsed over to the C. I. T. Finance Company, secured by a chattel mortgage. The amount of the note to be endorsed to the Finance Company was for $13,199 plus finance charges. He alleges that he signed the note in blank, with the understanding that the sum to be filled in was $13,199 plus finance charges. He alleged that $520.79 was added by the plaintiff to the amount agreed upon as the sum payable under the note. He therefore averred that he was entitled to a setoff of $520.79 against the $800 payable to defendant under the note sued upon, and that he owed only $279.21, which he tendered into court.

As to Count 4, defendant alleged that he owed $627.32, and tendered that amount into court.

The counterclaim of the defendant is predicated upon the allegation that the alleged $520.79 improperly added to the amount due on the note signed in blank carried its portion of interest, which amounted to $78.11, and for this amount he counterclaimed.

The evidence as it related to the sum alleged to be owing under Count 1 of the petition consisted, first, of the lease entered into between plaintiff Ryan Equipment Company, as lessor, and defendant Everett M. Brewer, as lessee. The equipment leased was new and had never been used. The pertinent parts of the lease, as it relates to the issues about the amount owing under it, provided that there should be paid monthly in advance $1,200 plus $24 sales tax.

The lease also provided that there was no warranty of the equipment other than

the manufacturer's warranty as set forth in the catalog. The pertinent parts of that are as follows:

"Allis-Chalmers Manufacturing Company

warrants that it will repair f. o. b. its factory, or furnish without charge f. o. b. its factory, a similar part to replace any material in its machinery which within six months after the date of sale by the Dealer, is proven to the satisfaction of the Company to have been defective at the time it was sold, provided that all parts claimed defective shall be returned properly identified to the Company's Factory, charges prepaid.

"This warranty is the only warranty, either express or implied, upon which said machinery is purchased. No other warranty has been made or exists, either expressly or by implication, all statutory and implied warranties being hereby expressly waived and excluded from this transaction, and the Company's liability in connection with this transaction is expressly limited to the repair or replacement of defective parts, all other damages, statutory or otherwise, being hereby expressly waived.

\* \* \* \* \* \*

"No representative of the Company has authority to change this warranty or this contract in any manner whatsoever, and no attempt to repair or promise to repair or improve the machinery covered by this contract by any representative of the Company shall waive any consideration of the contract, or change or extend this warranty in any manner whatsoever."

There was also a provision in the lease which stated, in bold type:

"Both lessor and lessee agree that no modification of this agreement shall be binding upon them or either of them, unless such modification shall be in writing and duly accepted in writing."

The vice-president and secretary of the company testified that the $1,224 due under the lease for the month of December, 1958, had not been paid. Defendant Brewer admitted that it had not been paid, but stated that he had phoned a Mr. Rowan, the manager of the repair or service department, on December 24, and told him that the steering clutch on the tractor had gone out. He testified that Rowan told him that the company was closing down for Christmas, and that the following conversation was had with Rowan: "I said, 'Well, I will bring it in and will you stop my rental,' and he said, 'I will stop your rental and bring it in after Christmas.'"

Rowan testified that Brewer called him and asked that the rental be stopped, and he replied, "I will talk to Mr. Ryan about it." Ryan was the only one in the sales department, as the others had left for the holidays. The tractor was brought in the following Monday and was never used again by Brewer.

 This was all of the evidence as it related to the amount claimed to be due under the lease. The contract plainly states that there can be no modification of the contract except it be in writing and so accepted. For this reason alone there was no waiver of the amount due, but it is also quite evident that if an oral waiver had been permissible under the contract, there was no evidence that the rental was waived. There is no evidence that the service manager ever had been held out as a person authorized to negotiate contracts, or that he was actually or constructively clothed with such authority. The law, as it relates to reliance upon modification of a contract by an agent, is stated in 3 C.J.S. Agency § 317, p. 265:

"In an action between the principal and a third person, the party who sets up a modification of a contract, a compromise settlement, or a novation,

agreed to by the agent has the burden of showing the authority of the agent. The party relying on a contract of accord and satisfaction entered into by an agent on behalf of his principal has the burden of proving that the principal authorized the contract or subsequently ratified it."

Seibel v. Harry S. Surkamp Investment Co., Mo.App., 328 S.W.2d 179; Moorman Mfg. Co. v. Selsor, Mo.App., 226 S.W. 89; Curtiss Candy Co. v. National Finance Corporation, 228 Mo.App. 609, 71 S.W.2d 833; Distassio v. American United Life Ins. Co., 238 Mo.App. 279, 179 S.W.2d 610.

■ Neither is. the defendant aided by the factory warranty, as he seems to think, for it plainly has to do only with giving new parts for any defective parts delivered to the factory within the warranty period.

The court erred in denying plaintiff's motion for a directed verdict on Count 1 for the full amount sued for under that count.

The second count for damage to the tractor was based on cost of repairing the damaged and worn parts due to its six months' use. The lease provided:

"5. On non-tractor equipment the lessee agrees to maintain said machinery and equipment in the same condition as when delivered to it by the lessor, usual wear and tear excepted, and to pay all claims and damages arising from defects therein, or from the use of handling of said machinery and equipment, whether from injuries to the person or property, and to pay for all damages to the equipment, except the usual and ordinary wear and tear, during the life of this contract, and to return said property in as good condition as when received to the storage yard of the lessor, or receiving point designated by the lessor, usual and ordinary wear and tear excepted and to pay all freight, demurrage, storage, switching, drayage, trackage

or other charges against said equipment from the time the same shall leave the storage yard of said lessor up to and including the time of its return to said storage yard or other place of return agreed upon. *On all tractor equipment, the conditions in paragraph 5 apply except that the lessee agrees to fully maintain the machinery covered in this contract while in his possession and to return it in the same condition as received from the lessor with no exception made for usual wear and tear."*

The defendant claims that he was only liable for the damage to the shovel, which had broken teeth and cutting edge. The pleaded basis for his claim is that the emphasized portion of paragraph 5 was impossible of performance. There was, however, no proof of the impossibility of performance, so that need not be discussed.

■ Count 2 was actually submitted to the jury upon the theory that it was the plaintiff's custom to charge only for damages arising out of abusive use, and that the defendant relied upon this in renting the tractor. Evidence of custom and usage is not admissible to vary or to contradict the terms of a written contract, for one may certainly contract to do something contrary to the usual custom. Jacobs v. Danciger, 328 Mo. 458, 41 S.W.2d 389, 77 A.L.R. 1237; and Murphy v. Reed, Mo. App., 193 S.W.2d 947. It would serve no useful purpose to further discuss the theory of custom and usage, for there is no proof that there was such a custom or that defendant relied upon it. The only testimony touching upon charging for the damage done by the use of the tractor was as follows:

"Q. Mr. Hartmann, if this tractor had been brought back with only wear and tear of an ordinary nature, or rather, with wear and tear beyond ordinary wear and tear, that is, abusive use to it, would that have affected the custom or policy of Ryan Equipment

---

Company as to the honoring of warranties?

"A. On abusive damage, the customer would be charged for it.

"Q. But not ordinary wear and tear?

"A. Well, abusive damage—."

■ This constituted evidence of nothing except that the defendant was charged for abusive damage. It certainly did not exclude other damage to the tractor. The question that should have been submitted to the jury on this count was whether or not there was damage to the tractor, and if so the amount thereof, and the court erred in not so instructing.

Count 3 is on a note for $800, dated April 14, 1958 and payable June 1. This note is signed by defendant Everett M. Brewer and is payable to the plaintiff. As stated, the defendant contended that he was entitled to an offset of $520.79.

On this count the defendant prevailed in so far as he was allowed the offset claimed, and the first error that plaintiff charges is that the court should not have refused plaintiff's offered Instruction F. The instruction directed the jury to find that the plaintiff was entitled to attorney's fees under the terms of the note, regardless of any offset allowed. The note itself is a printed form of an installment note. Only the first part is filled in, and it provides, as stated, for one payment of $800 on June 1. The following part of the note provides for monthly payments of a like amount each month and for attorney's fees if placed in the hands of the attorney after maturity. This is all in one sentence and obviously has no relation to the agreement to pay $800, the total amount of the note, on June 1.

■■ When a printed form is used and it is altered by interlineation in conflict with the printed portion, the interlineation prevails. We cannot, therefore, pick out a phrase allowing attorney's fees on the installment note and apply it to what was admittedly a simple promissory note for $800. Green v. Cooke Sales and Service, Inc., Mo.App., 284 S.W.2d 880. The court therefore did not err in refusing the instruction offered.

■ The note was given in part payment of the purchase price of a new tractor. Defendant Brewer brought a tractor that he owned to the plaintiff's place of business when he was told that if he brought it in, they could perhaps work out a trade for a new one. After the tractor was brought in, the plaintiff's service department started to repair it, but the defendant testified that he had given no order, either written or oral, for them to do so. While it was in the process of repair, a deal was made to trade it in on a new tractor. This required financing, which was to be done by a note payable to the Ryan Equipment Company, which was to be endorsed over to the C. I. T. Corporation. The amount of the note was for $15,777.87. The defendant signed the note in blank, and according to his testimony it was filled in by the plaintiff for an amount in excess of the sum agreed upon by $520.79. This $520.79 consisted of a charge of $420.79 for repair of the tractor traded in and $100 for a freight charge on the new tractor. The defendant's testimony was that there was no agreement that he was to pay for the repair of the tractor that was accepted in trade, and that there was no agreement that he was to pay freight charges. There was ample evidence to substantiate both of these contentions. The invoice mailed to the defendant by the plaintiff covering the transaction showed the freight prepaid, and there was no charge noted on the invoice for the repair of the tractor traded in.

■ It is contended that the court erred in refusing Instruction E offered by the plaintiff, but this instruction directed the jury to find the defendant liable for the $100 freight charge, and since on this point

the evidence was conflicting, the instruction was properly refused.

 It is also urged that Instruction 4 given at the request of the defendant was erroneous in that it was in conflict with the evidence. Part of the instruction to which complaint is directed tells the jury in substance that if they find that the $100 freight charge that was included in the note had been included in the purchase price, they should find for the defendant on this item. The invoice mentioned is sufficient evidence of this to warrant its submission to the jury, and the instruction was therefore not erroneous.

 The next error urged goes to the counterclaim. This counterclaim was for the interest on the $520.79 that the defendant had paid. It is contended that the instruction allowing the sum to be found for the defendant was erroneous because he paid the note voluntarily. This contention is without any logical foundation for the claimant was obliged to pay the note. The note had been endorsed over to the C. I. T. Corporation, which was not a party to the original transaction.

 As to Count 4, no error has been asserted on appeal. The court assessed all costs in the case up to April 10, 1959 against the defendant. April 10th was the date on which the defendant made tender. The costs thereafter were assessed four-fifths against plaintiff and one-fifth against the defendant. The plaintiff claims that this was erroneous, and so it was. The tenders were made on the various counts of the petition after the suit was brought. In such case, there must be a tender of the costs that have accrued up to the date of the tender of the amount admitted to be owing in order to relieve the defendant from further costs. This is the provision of V.A.M.R. 77.24, and since there was no compliance with it, all costs should be assessed against the defendant. Wolff v. Hartford Fire Ins. Co., 204 Mo.App. 491, 223 S.W. 810.

. A motion to dismiss the appeal was filed on the ground that the appellant's brief failed to comply with V.A.M.R. 83.05. The brief appears to be in substantial compliance with the rule, and the motion is therefore overruled.

The judgment is reversed in so far as it relates to Count 1, with directions to enter a finding for the plaintiff. As to Count 2, it is reversed and remanded for a new trial. It is affirmed as to Counts 3 and 4 and as to the counterclaim. It is reversed as to the matter of costs, which are to be assessed against the defendant.

ANDERSON, P. J., and RUDDY, J., concur.